LAURA LAMKIN et al., Appellees, v. LEONARD LAMKIN, Appellant.

**VENUE: Change of Venue—Codefendants with Diverse Residences—1 Nominal and Necessary Parties.** One who holds money in which he concedes he has no interest, but who, being in doubt as to the true ownership, refuses to pay to either of two claimants, is a necessary party to an action to determine such ownership, especially where plaintiff prays for judgment against said holder. So held in an action wherein such holder was made a defendant in the county of his residence, and another defendant demanded a change of venue to the county of such other's residence on the claim that the holder of said money was only *nominally* a defendant. (Secs. 3462, 3501, 3504, Code, 1897.)

**APPEAL AND ERROR: Harmless Error—Refusing Change of Venue 2 in Equity Cause.** Whether it is error without prejudice, and therefore harmless, to erroneously refuse, in an equity cause, a change of venue to the county of applicant's residence, in the absence of any showing of loss of evidence or added expense, on the theory that trial *de novo* on appeal removes possibility of prejudice, *quaere*. (Section 3504, Code, 1897.)

**LIMITATION OF ACTIONS: Computation of Period—Successive 3 Transactions.** The running of the statute of limitations sufficient to bar an action must be confined to the distinct transaction on which the action is brought. In other words, such a plea may not be aided by adding the time elapsing on a fully closed and consummated transaction to the time elapsing on the one on which action is brought, even though the latter followed, in natural sequence, the former.

PRINCIPLE APPLIED: Plaintiff owned certain lands and borrowed of defendant an amount sufficient to pay off mortgages thereon. In 1895, plaintiff deeded the lands to defendant. Plain-

tiff claims that this was done to secure defendant and that defendant agreed to deed the land back to plaintiff at any time desired by plaintiff and that, in case the lands were sold, plaintiff was to receive the purchase price, less defendant's claim for said money loaned. The court found that this was true. In January, 1910, defendant, at plaintiff's request, executed a deed to the property, with the blank for grantee unfilled, and delivered it to plaintiff. In April, 1910, plaintiff sold the land and delivered said deed to the purchaser, after filling in said purchaser's name as grantee. To protect defendant in the balance due on his loan, notes for $2,000, representing part of the purchase price, were made to defendant, a fact which defendant did not then know, but learned later. These notes were later paid to the bank where the notes were deposited. Soon thereafter, defendant set up the claim that he owned the claim absolutely and, consequently, the money in the bank. Plaintiff then (1911) brought action to determine the ownership of the money. Defendant pleaded the statute of limitations, on the theory that the transaction dated back to the deed of 1895. *Held,* the deeding of the land to defendant in 1895, with agreement to redeem to plaintiff, and the fulfillment of that agreement by the deed of 1910, fully consummated one transaction—the trust agreement—and that the subsequent sale of the land by plaintiff was a separate transaction, and that the time elapsing on the former could not be added to the time elapsing on the latter.

**TRUSTS: Execution of Trust—Effect.** A trustee may not repudiate
4  his act in fully consummating a trust according to the terms thereof.

PRINCIPLE APPLIED: See No. 3.

**APPEAL AND ERROR: Assignment of Error—Brief Points.** Propo-
5  sitions not assigned as error in the manner required by the rules (Rule 53) will not be considered on appeal.

*Appeal from Woodbury District Court.*—DAVID MOULD, Judge.

FRIDAY, SEPTEMBER 29, 1916.

ACTION in equity in which plaintiff seeks to establish that certain money and a certain note which are a part of the proceeds of the sale of certain real estate, which money and note are held by the defendant bank, belong to her, and not to the defendant Leonard Lamkin. There was a decree for

plaintiff, and the defendant Leonard Lamkin appeals.—
*Affirmed.*

*T. E. Diamond* and *Yeaman & Smith,* for appellant.

*E. P. Farr, C. N. Jepson* and *J. F. Stecker,* for appellees.

PRESTON, J.—The petition alleges substantially that, on
April 6, 1910, one Lewis Lamkin placed in the defendant
bank certain notes made by one Horton, who was the pur-
chaser of certain real estate; that said notes were secured by
a mortgage on said real estate; that said notes were, without
the consent of plaintiff, made payable to the defendant
Leonard Lamkin; that said notes and the proceeds thereof
were the property of plaintiff; that said notes were fully col-
lected by defendant bank; and that defendant Leonard Lam-
kin claims some right to or interest in the proceeds of said
notes; that the bank claims no interest in the money or the
notes and mortgage, and is willing to turn the same over to
the owner of said property upon an order of court. The peti-
tion prays for a decree that the proceeds of the said notes and
mortgages are the property of plaintiff. The petition was
filed April 28, 1911. No original notice was ever served upon
defendant Leonard Lamkin, but, on August 30, 1913, he
entered his appearance and filed a motion for a change of
place of trial, showing that, at the time of the commencement
of this action and for some years before and ever since, he
had been and still is, a resident of O'Brien County, Iowa.
The affidavit further states that said action was brought to
recover $1,995.15, a sum of money deposited by one Horton
in defendant bank as the proceeds of the purchase price for
the sale by the said Leonard to Horton on said real estate,
and, further, that the bank claimed no interest in the money,
and that the said Leonard is the real party defendant in
interest. The motion asked that the cause be transferred to
O'Brien County, and asked for expenses in attending and in
procuring a change in the place of trial. The answer of the

defendant bank, which was filed after the filing of the motion for change of venue, to wit, on March 6, 1914, is a denial of all the allegations of plaintiff's petition and the defendant's cross-petition, but admits that there were deposited with it said notes made by Horton on April 6, 1910, and that the bank now has the proceeds of said notes, amounting to $2,055.15, and that defendant is ready and willing to pay said money to the clerk upon order of the court, or defendant will pay said sum of money to whomsoever the court may direct. After the motion for change of venue was overruled, the defendant Leonard Lamkin filed his separate answer as follows:

"Count 1. That he denies each and every material allegation contained in plaintiff's petition, except such as are hereafter specifically admitted, explained or otherwise answered. Further answering, the defendant Leonard Lamkin states that, some time prior to the 6th day of April, 1911, he sold and conveyed to one Andrew J. Horton, certain real property then owned by the said defendant, and that thereafter, the said Andrew J. Horton deposited in the Bennett Bank, for the use and benefit of said defendant Leonard Lamkin, the sum of $995.15, together with one note in the sum of $1,000, which said note has since been paid by the said Andrew J. Horton to the said Bennett Bank, and that all of the said sums of money are now in the hands of the said Bennett Bank, and that all of the same are now, and always have been, the property of the said Leonard Lamkin. The defendant specifically denies that the real estate so sold by the defendant Leonard Lamkin to the said Andrew J. Horton, as aforesaid, was, at the time of said sale, the property of the plaintiff herein, but avers that it was at said time, and had been prior thereto, the property of the said defendant, Leonard Lamkin, and the plaintiff herein has no right, title or interest in or to any of the said sums, or in or to any part thereof.

"Count 2. The defendant Leonard Lamkin, by way of

cross-petition against his codefendant, the Bennett Bank, makes Count 1 hereof a part of this count, as fully and to the same extent as though herein fully rewritten, and further alleges, that, some time prior to the 6th day of April, 1911, the defendant Leonard Lamkin sold and conveyed certain real estate to one Andrew J. Horton, and that the consideration therefor, to wit, the sum of $1,995.15, including principal and accumulated interest, was, at the request of the defendant Leonard Lamkin, deposited by the said Andrew J. Horton in the Bennett Bank, at Sioux City, Iowa, his codefendant herein, for the use and benefit of, and subject to the call or demand of, the said defendant Leonard Lamkin; that the said sum of money aforementioned always has been, and still remains, the property of the said Leonard Lamkin, and that, although the defendant Leonard Lamkin has frequently made demand of the said Bennett Bank for the said funds above mentioned, nevertheless the said Bennett Bank has always failed, refused and neglected to pay the same or any part thereof over to the said Leonard Lamkin, one of the defendants herein. Wherefore, the defendant asks for judgment dismissing the plaintiff's petition, for the costs of this action and for judgment adjudging and determining that all of said sums of money deposited as the proceeds of the sale of the real estate hereinabove mentioned be adjudged and determined to be the property of the defendant Leonard Lamkin, and the defendant Leonard Lamkin further prays for judgment against the said Bennett Bank for the sum of $1,995.15, together with interest thereon at the rate of 6 per cent per annum, from and after the 6th day of April, 1912, together with the costs of this action.''

The tract of land referred to in the case contains about 28 acres. On and before January 27, 1894, the title to the land was in Lewis Lamkin, and on that date Lewis gave his wife, Laura, the plaintiff, a quitclaim deed thereto, except a mortgage on part of the 28 acres for $350, and a mortgage on another part of said tract for $600, on which $350 had

been paid. Said deed was filed for record on February 1,
1894. June 29, 1895, plaintiff, Laura Lamkin, and husband
executed a warranty deed to defendant Leonard Lamkin to
the same property, subject to the mortgages before referred
to, which deed was filed for record July 1, 1895. February
1, 1908, defendant Leonard and wife executed to the Farmers'
Loan & Trust Company a mortgage on the property for
$1,000, which was recorded February 20, 1908. January 8,
1910, defendant Leonard and wife executed a warranty deed
to Allen J. Horton, which was recorded April 12, 1910.
April 8, 1910, Horton and wife executed a mortgage for
$2,000 to Leonard Lamkin, which was recorded July 29, 1910.
April 19, 1910, Leonard Lamkin executed a power of attorney
to Lewis Lamkin, which was revoked July 28, 1910. It is
plaintiff's contention that the deed before referred to and
executed June 29, 1895, by plaintiff and her husband to
Leonard Lamkin, was executed pursuant to a certain letter
written to plaintiff by defendant Leonard Lamkin, and that
there was an express trust for the reconveyance to plaintiff,
or the conveyance to a purchaser selected or designated by
her of the land in question; that said express trust was evi-
denced by the letter; that this trust was voluntarily carried
out by the parties by the execution to Horton by Leonard
Lamkin and wife of the deed dated January 8, 1910, before
referred to; and that this deed was executed with the name
of the grantee left blank, which deed was delivered in that
condition to the plaintiff by her agent, Lewis Lamkin, acting
for her. Plaintiff also contends that the deed of June 29,
1895, above referred to, which was absolute in form, was in
fact a mortgage, entitling plaintiff to redeem or entitling her
to a reconveyance of the land to a purchaser designated by
her, which right to a reconveyance was voluntarily carried
into effect by the parties by the execution of the deed by
Leonard Lamkin and wife to Horton. The errors assigned
and relied upon by appellant are that the court erred in over-
ruling the motion for change of place of trial and in finding

for plaintiff on the other issues. Appellant claims that, if the deed from plaintiff and her husband to Leonard Lamkin was a mortgage, then plaintiff's cause of action is barred by the statute of limitations and she was guilty of laches.

1. Appellant contends that the defendant bank was merely a nominal defendant, and that, therefore, the court erred in refusing to change the place of trial to O'Brien

County, the residence of the defendant Leonard Lamkin, the sole party in interest, as appellant claims. And in support of his proposition, appellant cites Section 3462, Code, 1897, and *Troy Portable Grain Mill Co. v. Bowen,* 7 Iowa 465; *Omaha, etc., R. Co. v. O'Neill,* 81 Iowa 463; *Lessenich v. Sellers,* 119 Iowa 314, 316; *Barry v. Wochosky,* 57 Neb. 534; 40 Cyc. 97, 100; and other cases.

*1. VENUE: change of venue: co-defendants with diverse residences: nominal and necessary parties.*

We shall not review these cases. It is enough to say that they were cases where, under the facts and circumstances, the party was not the real party in interest, or not a necessary party. But, in the instant case, we think the bank was a proper and necessary party, as was appellant. The bank had collected and was holding the money which was the proceeds of the notes. It was doubtless in doubt as to who was entitled to the money, but it was resisting the payment of the money to either party. Its answer, filed, it is true, after the filing of the motion for change of venue, was a denial of both the claim of plaintiff and the defendant to this money. The plaintiff asked judgment against the bank, as did the defendant by its cross-petition. Plaintiff could, doubtless, have sued the bank alone, but had the right to bring in the defendant Leonard Lamkin, in order that he might be bound by the judgment, and thus avoid further complications and litigation.

It is true that the bank also disclaimed any interest in the money. At the time of the ruling on the motion, the trial court had before it the petition and the motion for change of venue. If the bank was wrongfully refusing to pay to plaintiff any money belonging to her which was in the possession

of the bank and due and payable and which the bank wrongfully refused to pay, the plaintiff was entitled to judgment against the bank for that sum, and the bank was a necessary party in determining that question. For these reasons, we think the bank was more than a mere nominal party and was a necessary and proper party.

Appellee further contends that the overruling of the motion was not in any manner prejudicial to appellant, and that there may be no reversal for any error not prejudicial. We shall not go into the point at length, and

2. APPEAL AND ERROR: harmless error: refusing change of venue in equity cause.

it is unnecessary to determine the point. The contention is that, this being an action in equity, it is triable *de novo* in this court, and, whether the action was tried in O'Brien County or Woodbury County, the case would be tried on the merits in this court. There is no showing that appellant could have produced any evidence in O'Brien County which he did not produce on the trial in Woodbury County. There is no showing that the fees of appellant's attorneys were any more than he would have had to pay for the same services rendered by his attorneys in O'Brien County. The fact is that the trial court taxed all the costs of the case to the plaintiff in the final decree. Appellee further contends that, if the case were reversed on this point, with directions to transfer the trial to O'Brien County, and the cause retried there, and again brought to this court by a second appeal, the costs and expenses for appellant would be greatly increased, without any benefit to him.

2. On the merits, the question presented is largely one of fact. It is often a question with us whether, in such a case, we ought to set out the evidence at length. Ordinarily, it is of little benefit to the profession to write long opinions in such cases, and yet it is difficult to cover the case, sometimes, without doing so. In the instant case, counsel for appellant has very fairly, we think, stated the ultimate facts which the trial court could have found from the evidence.

We have often said that, because the trial court sees and hears the witnesses, it is in a better position to determine disputed fact questions than we can be, and even in an equitable action, the findings of the trial court will be given some weight. As to some of these ultimate facts and some of the more important ones, there is no dispute in the evidence. As to others, there is a conflict; but, after reading the record, we are satisfied with the findings of the trial court and that plaintiff has established her claim by that clear and satisfactory evidence required in such cases. The ultimate facts shown by the record are substantially these:

For about three years prior to January 27, 1894, the title to the 28 acres in question was in the name of Lewis Lamkin. (Lewis is sometimes referred to as Louis.) On January 27, 1894, Lewis Lamkin conveyed this 28 acres to his wife, Laura, by quitclaim deed, subject to two mortgages to T. C. Griffith, which together aggregated about $600 of unpaid principal, and the grantee assumed and agreed to pay them.

Prior to June 29, 1895, the mortgagee wanted his $600 and interest. Laura and Lewis did not have the money, and borrowed from defendant Leonard Lamkin sufficient to pay off the two Griffith mortgages. Lewis states the amount borrowed as $600. Leonard, defendant, claims it was $750, the proceeds of corn sold by him at Sheldon. As there was accrued interest to be paid, the probability is that the sum borrowed was $750, and the trial court so found.

Shortly prior to June 29, 1895, nearly 18 months after above deed to Laura was executed, defendant Leonard Lamkin wrote a letter to plaintiff Laura, which letter was duly received. The proof shows that this letter has been lost or destroyed, and there is parol evidence as to its contents. The letter stated that he (Leonard) thought it "would be better for us" to deed the property over to him, that that would secure him for his money, and he would deed it back to her at any time she wanted him to, and in case it was sold, "we could get the proceeds above what was coming to him."

In accordance with the terms of the foregoing letter, Laura N. Lamkin and her husband, on June 29, 1895, conveyed said 28-acre tract by deed of warranty, to defendant Leonard Lamkin, subject to the two mortgages to Griffith, on which there was due the aggregate sum of $600 of principal. There was some complication which had prevented the discharge or release of the two Griffith mortgages; hence they were excepted in said deed, Exhibit I. From the date of this deed up to or shortly after the beginning of April, 1910, Laura continued in possession of said premises, paying no rent therefor, and during the whole of the same period, except some four or five months when Lewis was in Oregon, he also lived on said premises with his wife, Laura. Defendant claims that plaintiff paid the taxes for the use. During all of the same period, Laura or Lewis paid out of their own money the taxes on said tract of land, taking the tax receipts in the name of Leonard, as the holder of the legal title thereto, and the person in whose name said tract was taxed. Some, or most, or perhaps all, of these tax receipts were forwarded by Laura or Lewis to Leonard, probably by mail. One of these tax receipts, dated November 15, 1901, for the taxes for the year 1900, is in evidence. During the same period, Lewis or Laura kept the buildings on said tract insured in the name of one of them, and paid the premiums thereon out of their own money. One of these policies is in evidence, insuring the property for five years, from October 8, 1905, to October 8, 1910.

From June 29, 1895, up to July 28, 1910, or shortly thereafter, Leonard never made any claim to Laura or Lewis that he was the owner of said land, or of securities derived from a sale of said tract hereafter referred to, and the court was justified in so finding, notwithstanding the testimony of Leonard to the contrary. Leonard claimed that Lewis owed him $1,500 or $1,600, when Laura and Lewis conveyed this tract to him, on June 29, 1895, which is denied by plaintiff, though she admits that she owed something. Leonard further claimed

that this indebtedness, together with the Griffith mortgages, which Leonard, as grantee, assumed and agreed to pay, constituted the consideration for the absolute conveyance of the land to him. If this were true, then no part of the $750 borrowed by plaintiff from Leonard ought to have been applied in payment of the Griffith mortgages, as Leonard had assumed the payment thereof as part of the consideration of Exhibit I, had made them as his own debt, and Laura and Lewis no longer owed anything to Griffith.

About the first of February, 1908, nearly 13 years after the deed (Exhibit I) from Laura and husband to Leonard, Laura wanted some money, and it was arranged that Leonard should execute a note for $1,000 to the Farmers' Loan & Trust Company, secured by a first mortgage on the 28 acres, signed by Leonard Lamkin and his wife, and that the proceeds should be paid to Lewis for Laura. This was accordingly done. Said promissory note is in evidence. Said mortgage is also in evidence. The proceeds were accordingly paid over to Lewis, without any objection on the part of Leonard, and therefrom, Lewis paid to Leonard $450 to apply upon the loan to Laura in the sum of $750 and interest; a part was used to pay off a small incumbrance against this tract, afterwards discovered in addition to the two Griffith mortgages, and the balance was used by Laura or her husband in such manner as they saw fit. All interest on the $1,000 note and mortgage to the Farmers' Loan & Trust Company was paid by Lewis.

Shortly prior to January 8, 1910, Lewis had discovered two prospective buyers of this 28 acres, and, on behalf of Laura, went to defendant on said date, and at Laura's request, Leonard and his wife, on January 8, 1910, executed a warranty deed to said 28 acres, leaving the name of the grantee blank, and Leonard delivered this deed in this condition to Lewis, as agent for Laura. Leonard knew nothing of the proposed terms of the sale, and made no objection to

executing this deed with a blank for the grantee's name, or to delivering the same in that condition to Laura, by Lewis as her agent. Early in April, 1910, Lewis succeeded in closing a sale of the 28 acres to Andrew J. Horton for the sum of $4,000, of which sum $1,000 was to be paid in cash, $1,000 to be paid by assuming the mortgage for that sum payable to the Farmers' Loan & Trust Company, and the remaining $2,000 was to be evidenced by notes secured by a second mortgage on said tract of land. Thereupon, the name of Andrew J. Horton was inserted in the deed above referred to, executed by Leonard and wife, with the grantee's name left blank. Said deed was duly delivered to Horton and was filed for record by him on April 12, 1910. At the same time, and as part of the same transaction, the note for $2,000 and the mortgage on said tract securing the same were executed in the name of Leonard Lamkin, as payee. The mortgage was acknowledged on April 8, 1910, and was filed for record on July 29, 1910. At the same time, and as part of the same transaction, the cash payment of $1,000 was made by Horton to Lewis for Laura, and was deposited in the bank to the credit of Laura, or to their joint credit, and was checked out by Laura or Lewis. No objection to this was ever made by Leonard, nor was any claim for this $1,000 ever made by him to Lewis or Laura, notwithstanding that this $1,000 was his, if his claim were true that he was the absolute owner of this 28-acre tract. Even in this case, defendant alleged that he sold this 28-acre tract to Horton "and that the consideration therefor, to wit, the sum of $1,995.15, including principal and accumulated interest," was deposited in the Bennett Bank for the use and benefit of defendant.

The $1,995.15 above referred to was the proceeds of the collection of Horton's note and mortgage for $2,000, with accumulated interest, less some small banker's charges, this note having been paid off to the Bennett Bank before the time when this action was tried. Defendant in his answer

entirely ignores the fact that there was a cash payment of $1,000 by Horton to Laura, and defendant does not seek to recover it in this case, although he had a right so to do, if, in truth and in fact, he was the absolute owner of said 28 acres, as he contends.

After the Horton transaction had been fully closed, the $1,000 of cash paid, the deed to Horton delivered and filed for record on April 12, 1910, and the Horton mortgage for $2,000, which was acknowledged on April 8, 1910, had been duly delivered, some person in the Bennett Bank suggested that, the deed having been executed with the name of the grantee left blank, it would be safer for Horton if Leonard Lamkin would execute a power of attorney. Thereupon, an attorney wrote to Leonard, upon the suggestion of Mr. Gooch, cashier, and told Leonard that the bank required a power of attorney duly executed by him, and, on April 19, 1910, a week or so after the Horton transaction was fully completed, Leonard Lamkin went before a notary and executed a power of attorney, which he forwarded to the bank. Leonard made no objection to executing this power of attorney, and after its delivery to the bank, he made no inquiries concerning the same.

Shortly after the Horton transaction was closed, Lewis went to Oregon and stayed there some four or five months. During his absence, Laura became dissatisfied with Lewis and commenced an action for divorce. Laura also claimed that Lewis was drawing out of the bank too much of this $1,000 cash payment made by Horton, which had been deposited in the Bennett Bank, and Laura went to Leonard, some time in July, 1910, to get him to come down and stop it, if he could; but Leonard paid no attention to this request.

On or shortly prior to July 28, 1910, Laura went a second time to Leonard to get him to come down to endeavor to prevent Lewis from drawing any more money out of the Bennett Bank. This time, Leonard came. He and Laura

went to the office of attorney Farr; then they all went to the bank; and it was concluded that the best way to give the bank some ground or excuse for refusing to pay any more money to Lewis was for Leonard to execute a revocation of his power of attorney. He thereupon, on July 28, 1910, executed a revocation of said power of attorney. It was while Leonard was in the bank on this occasion that Leonard first learned that the $2,000 note and mortgage securing same were made to him as payee. The assignment of this Horton note and mortgage to Laura was considered, but Mr. Farr suggested that it was best not to assign them at that time, as the mortgage had not been recorded, and that the proper way to do was to first record the mortgage and then make the assignment on the record of the mortgage, so that the whole transaction would be of record. On July 29, 1910, the day following the execution of the revocation, the Horton mortgage was duly filed for record. Leonard made no claim to be the absolute owner of this mortgage, in the conversation at which Mr. Farr, Reeves and Laura were present, on July 28, 1910; but sometime afterwards, Leonard made his first claim that he was the absolute owner of the 28-acre tract when it was deeded to Horton, and was the absolute owner of the Horton $2,000 note and mortgage.

It is not certain from the record whether the conversation at the Bennett Bank on July 28, 1910, and the execution of the revocation on that day, were before or after Laura commenced her action for divorce; but it all occurred during the absence of Lewis in Oregon for some four or five months, commencing sometime in April, 1910. Somewhere about the end of August, 1910, or beginning of September, 1910, Lewis returned. The divorce case was dismissed, and Lewis and Laura renewed their relations as husband and wife, living together as such.

By its decree, the trial court found that, of the $2,055.15 in the bank, there should be paid to defendant Leonard Lam-

kin $978.75, being the amount found due him from plaintiff, and that the balance of the money, after the payment of costs, should be paid to plaintiff. The plaintiff contends:

3. LIMITATION OF ACTIONS: computation of period: successive transactions.

"Considering the original transaction as an express trust, mere lapse of time will not bar the same, nor will the statute of limitations commence to run, until: (1) The termination thereof by the terms of the trust agreement; or (2) the disavowal, denial or repudiation of the trust by the trustee, brought to the knowledge of the *cestui que trust* or beneficiary.

"In this case, the trustee voluntarily carried out and fulfilled the original trust agreement by executing and delivering to plaintiff, on January 8, 1910, the deed, conveying said 28 acres, with the name of the grantee in blank, thereby terminating by complete performance the original trust agreement in and to said land," citing *Blackett v. Ziegler*, 147 Iowa 167, 172; *Carr v. Craig*, 138 Iowa 526, 533; *McCord v. McCord*, 136 Iowa 53, 60; *Smith v. Smith*, 132 Iowa 700, 704; *Murphy v. Murphy*, 80 Iowa 740; *Wilson v. Green*, 49 Iowa 251.

Counsel do not discuss the question of the termination of an express trust by its terms, because, as they say, that question is not in the case.

At no time, did the defendant Leonard deny, dispute, or repudiate the express trust under which he held the 28 acres prior to the execution of the deed with blank grantee, on January 8, 1910. By his conduct, he seems to have recognized plaintiff's claim. We shall not repeat the circumstances tending to so show. When he was called upon by Lewis Lamkin for Laura, on January 8, 1910, to execute the deed with blank grantee, he did so promptly, without objection. This deed was a final fulfillment and completion of the original trust agreement. He had done just what he had agreed to do, and after it was done he could not repudiate it or place himself in the same situation he had occupied before he executed and delivered

4. TRUSTS: execution of trust: effect.

the deed to Lewis for Laura. This deed was held for her by Lewis for three months before the transaction with Horton was completed. Plaintiff could have inserted her own name therein if she saw fit, finishing the transaction with Horton in that way, and she could have held or deposited the securities so as to protect Leonard's rights as a creditor, as was actually done, or could have deposited the proceeds in the bank for the benefit and protection of both. The old trust on the land was completed and wiped out by the deed executed by the defendant in blank, and we think a new trust in the securities commenced with the deposit of those securities with the Bennett Bank in April, 1910. There is little, if any, argument on the part of appellant on the trust proposition.

3. Defendant's argument is largely to the point that, if the deed from plaintiff to defendant Leonard, of June 29, 1895, was given as security, and therefore a mortgage, plaintiff's claim is barred by the statute of limitations. And if this was all there was to it, there might be force in his contention.

Appellee's contention at this point is:

"Considering the original transaction as a deed to the 28 acres absolute in form, but intended as a mortgage, the original transaction was fully completed and closed up by the deed to said land made with a blank grantee, duly and unconditionally delivered by Leonard to Lewis, acting for Laura, which deed finally disposed of the land; and the deposit by Laura in the Bennett Bank in April, 1910, of the Horton notes and mortgage was an independent and entirely new transaction, upon which the statute of limitations commenced to run on the date of said deposit in April, 1910, and the only right Leonard had therein and thereto was to receive the amount owing to him from the proceeds of said notes and mortgage."

Appellee contends that the defendant has not properly pleaded the statute of limitations, but we deem it unneces-

sary to discuss this feature of the case, for the reason that, in
our opinion, the determination of the point

5. APPEAL AND ER- as to trusts is decisive of the case.   The only
   ROR: assign-
   ment of error:   other point argued by appellant is as to the
   brief points.
sufficiency of plaintiff's tender or offer to pay
plaintiff.   The point is nowhere presented as an error relied
upon or as a proposition or point; and, under the rules of
this court (Section 53), it may not be considered.

We are of opinion that the judgment of the district court
is right, and it is therefore—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.