IDA M. STEVENS, Administratrix, Appellee, v. PEOPLES SAV-
INGS BANK, Appellee, et al., Appellant.

IDA M. STEVENS, Administratrix, Appellee, v. FARMERS AND
MINERS SAVINGS BANK, Appellee, et al., Appellant.

**APPEAL AND ERROR:** Perfecting Appeal—Service of Notice on
1 Attorney. Notice of appeal addressed to appellee's attorneys is
sufficient, under Section 4114, Code Supp., 1913, where service
of the same is made upon the attorneys as such, the relation of
client and attorney being such that a notice to the attorney
should be deemed the practical equivalent of actual notice to
the client.

**VENUE:** Change of Venue—Nonresidence of Codefendant. Defend-
2 ant, who is a proper party to a suit, cannot have the venue
changed to the county of her residence if her codefendant is a
resident of the county where the action is brought. Section
3501, Code, 1897.

**PARTIES:** Defendants—Bank Deposits—Action Against Bank and
3 Claimant of Deposit. One having the bank passbook and claim-
ing to be the owner of a deposit is a proper party defendant,
under Sections 3462, 3466, Code, 1897, in an action brought
against the bank for said deposit.

**EXECUTORS AND ADMINISTRATORS:** Appointment—Jurisdic-
4 tion of Court—Residence. Evidence reviewed, and held to sus-
tain finding of trial court that decedent, at the time of his
death, was a resident of the county in which administrator of
his estate was appointed.

**EVIDENCE:** Res Gestae—Declaration of Ownership of Bank Pass-
5 books. Where, in an action brought by decedent's administra-
tor, for bank deposits made by decedent, against one claiming
ownership thereof under alleged gift from decedent, plaintiff in-
troduced evidence of declarations of the alleged donee inconsist-
ent with her claim of ownership, *held* that evidence offered by

said claimant of declarations made by her before decedent's death, and while in possession of his bank passbooks, were admissible, (a) as being in the nature of *res gestae*, and (b) as showing the *animus* and intent attending possession, and (c) as rebutting plaintiff's evidence tending to show that claimant had not made such claim during decedent's lifetime.

**APPEAL AND ERROR:** Review—Exclusion of Evidence—Prejudicial Error. Where evidence was excluded which was admissible, and the court, which tried the case without a jury, based its finding in part upon the absence of such evidence, its exclusion held prejudicial error.

*Appeal from Monroe District Court.*—SENECA CORNELL, Judge.

MARCH 11, 1919.

CONTROVERSY over the ownership of certain bank deposits, which were represented by passbooks. The deposits in question were made in his lifetime by Grant Buckner, now deceased. The plaintiff is his administratrix, and as such, claims the amount of the deposits. The controversy involves separate deposits in two banks. The plaintiff brought a separate action against each bank, and in each case joined Marie Buckner as a defendant, she being in actual possession of the bank passbooks, and claiming to be the owner thereof and of the deposits represented thereby. By agreement of the parties, the two cases were consolidated and tried together as an action at law, without a jury. Judgment went for the plaintiff, and the defendant appeals.—*Reversed and remanded.*

*Malcolm & True* and *N. E. Kendall,* for appellant.

*McCoy & McCoy* and *J. C. Mabry,* for appellee.

EVANS, J.—Prior to September, 1916, Grant Buckner had been a resident of Monroe County for 18 years. During that period of time, he had been in the continuous employment of the Monroe Hotel as its cook. He made his

home at the hotel. During that period of time, he was not the head of a family. He had been married, but his wife had been divorced from him, and had obtained the custody of their only child, a daughter. He was a colored man. He had formerly lived at Oskaloosa. He had a sister resident there. Shortly prior to September, 1916, he became afflicted with an ailment which proved to be quick consumption. He was advised by his physician to take a rest, and to seek recuperation. He once contemplated going to a sanitarium. He finally decided to go to the home of his sister at Oskaloosa. He went there about September 1, 1916, and died there on October 19th. His belongings were few, and in the main were portable in a trunk or suit case which he carried with him to Oskaloosa. He left a few items of property, including a bedstead, at Albia. He had an understanding with his employer that his place would be kept open for his return, in case of improved health. He had two bank passbooks, one of which showed a deposit of $713 in the Peoples Savings Bank, and the other showed a deposit of $629 in the Farmers and Miners Savings Bank. The banks respectively made no defense against these deposit claims. They admit their liability respectively to the proper holder of the passbooks. It is the claim of Marie Buckner, defendant, that the decedent gave to her these passbooks and the funds represented thereby, a few days before his death. The real controversy is over the ownership of these passbooks. Each bank asks, in effect, that the plaintiff, as administratrix, and the defendant Marie Buckner, as alleged donee, shall interplead, and that the question of such ownership may be adjudicated, so that the banks may be protected by such adjudications.

I. The appellees filed a motion to dismiss the appeal for want of jurisdiction. The ground of attack is that the notice of appeal was not addressed to the plaintiff appellee.

The notice of appeal was in the following

1. APPEAL AND
ERROR:
perfecting
appeal:
service of
notice on
attorney.

form:

"In the District Court of Monroe County, Iowa.

"Ida M. Stevens, Administratrix, Plaintiff, v. Peoples Savings Bank and Marie Buckner, Defendants.

"Ida M. Stevens, Administratrix, Plaintiff, v. Farmers and Miners Savings Bank and Marie Buckner, Defendants.

"Notice of Appeal

"To J. C. Mabry and McCoy & McCoy, Attorneys for the Plaintiff, and R. U. Woodcock, Clerk of the District Court of Monroe County, Iowa.

"You are hereby notified that the defendant, Marie Buckner, has appealed from the order and judgment of the district court entered in the above-entitled causes on October 11, 1917, in favor of the plaintiff, to the Supreme Court, and that said appeal will be heard and determined at the January term of said court for the year 1918.

"Malcolm & True, N. E. Kendall,

"Attorneys for said defendant.

"We hereby accept due and legal service of the foregoing notice of appeal this October 12th, 1917.

"McCoy & McCoy and J. C. Mabry,

"Attorneys for plaintiff.

"R. U. Woodcock, Clerk of the District Court."

It will be noted that this notice was not addressed to the plaintiff, but was addressed to her attorneys, as such. We have frequently held that a notice should be addressed to the person for whom it is intended. See *In re Estate of Anderson,* 125 Iowa 670; *Steele v. Murry,* 80 Iowa 336.

Section 4114 of the Code provides:

"An appeal is taken and perfected by the service of a notice in writing on the adverse party, his agent, or any

attorney who appeared for him in the case in the court below."

This section deals with the matter of *service* of the notice, rather than with its requisite form or contents. If this notice had been addressed to the plaintiff, it could undoubtedly have been properly served upon plaintiff's attorneys. Is it a fatal defect in the notice that it was addressed to the plaintiff's attorneys as such? There is a certain trend indicated in our past holdings which invites the argument made by the appellees against the validity of this notice. No case, however, has actually gone thus far. To hold the notice fatally defective in this case would be to take a step farther than we have gone heretofore. To so hold would be exceedingly technical. The notice as drawn unequivocally discloses an intent to notify the plaintiff, through her attorneys as such, that she has appealed. In *Bloom v. Sioux City Traction Co.,* 148 Iowa 452, we held that it was not a fatal defect in a notice of appeal that it was not addressed to the clerk of the district court. It was actually served upon him, and we held this to be sufficient. This was put upon the ground of the want of interest on the part of the clerk; but it was, nevertheless, a qualification of the broad proposition that the failure to address the notice to the party served is necessarily fatal to the validity of the notice. In *Pilkington v. Potwin,* 163 Iowa 86, 93, there was a failure to address the notice to the defendant, I. A. Potwin, and a failure also to address the same to his attorneys as such. Neither was there any acceptance of service by the attorneys as such. On the contrary, the attorneys accepted service as such for another defendant only. Our holding in that case, therefore, does not reach the case at bar. In *Sleeper v. Killion,* 166 Iowa 205, the validity of an original notice was involved. It was actually served upon two minors. It was not addressed to them. It did not indicate in any manner that they were parties to the suit entitled at the head of the notice. Neither did

it indicate in any manner that they had any interest in such suit, nor that any interest of theirs was under attack. It was held that the notice was fatally defective, and conferred no jurisdiction over the minors. It will be seen that the holding in that case dealt with substance, and not mere form. In the case of *Pilkington v. Potwin,* the opinion lays some stress upon the fact that the notice had been addressed neither to I. A. Potwin nor to his attorneys as such, and that there had been no purported service upon his attorneys as such.

We reach the conclusion that, in the notice before us, there was no room for mistake or doubt as to the real purport of the alleged notice of appeal, and that it should be held sufficient to address a notice of the appeal to the attorneys of the appellees as such, at least in any case where the service of notice of appeal is made upon the attorneys as such.

It should be noted, also, that a service of such notice upon the attorneys of the appellee is not a substituted service, in the ordinary sense, such as a leaving of copy at the place of residence with a member of the family; nor is it a constructive service, in the sense that a publication of a notice is. The relations of a litigant to his attorneys in the litigation are so close and active, and the responsibility of an attorney to his client in such a case is so definite and quasi official in its nature, that a notice to the attorney should be deemed the practical equivalent of actual notice to the client. We reach the conclusion that the motion to dismiss for want of jurisdiction should be denied.

II. The defendant Marie Buckner filed a motion for a change of place of trial from Monroe County to Mahaska County, on the ground that this was a personal action

2. VENUE: change of venue: nonresidence of codefendant.

against her, that she was a resident of Mahaska County, and that there was no warrant for bringing a personal action

against her in Monroe County. This motion was overruled. Code Section 3501 provides that personal actions, except as otherwise provided, must be brought in a county in which *some* of the defendants actually reside. In each of the

3. PARTIES: defendants: bank deposits: action against bank and claimant of deposit.

cases before us, the defendant bank did reside in Monroe County. If, therefore, Marie Buckner was a proper party defendant in an action brought against a resident of Monroe County, she was not entitled to a change of venue, under Code Section 3502. Was she a proper party defendant?

Code Section 3462 provides:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved in the action, except as otherwise expressly provided."

Code Section 3466 provides:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy between the parties before the court cannot be made without the presence of other parties, it must order them to be brought in."

On the face of the foregoing sections of the statute, they seem to answer our question in the affirmative. It is urged by the appellant that these sections are applicable only to equity cases. They doubtless have their most frequent application in equity cases, but their provisions are not confined to equity cases. In *Fowler v. Doyle*, 16 Iowa 534, a case at law, it was held that these sections had special application where a debtor is under an apparent liability to different parties for the same debt. See, also, *Kennedy v. Moore*, 91 Iowa 39; *Barto v. Harrison*, 138 Iowa 413; *Lamkin v. Lamkin*, 177 Iowa 583. We hold

that the motion for a change of venue was properly overruled.

III.   The defendant Marie Buckner denied the representative capacity of the plaintiff as the legally appointed administratrix of the estate of Grant Buckner.   Her ground

4. EXECUTORS AND ADMINISTRATORS: appointment: jurisdiction of court: residence.

of attack upon this appointment is that Grant Buckner, at the time of his death, was a resident of Mahaska County, and there was no jurisdiction in the district court of Monroe County to appoint an administrator for his estate. Whether the legality of such appointment can be thus attacked collaterally in this suit, we will not now stop to inquire.   The question was litigated below as a question of fact, and disposed of accordingly by a finding of the court that Grant Buckner, at the time of his death, had not lost his domicile in Monroe County.   We have read the evidence on this question.   It consists, in the main, of alleged declarations made by the deceased himself, during the period of his stay at the home of his sister and shortly prior to his going there.   Naturally, this was the only form of evidence available to either party, inasmuch as the deceased had not acquired any property or home of his own in Oskaloosa; nor had he been there long enough to give evidence by conduct (such as voting) of his probable intention. Whether he changed his domicile was a question of intent on his part.   Under the evidence, this intent can be found only from his own statements.   The evidence is conflicting only in the sense that many witnesses testified on behalf of the defendant to statements made by Buckner indicating that he had made a permanent change; and as many, perhaps, testified on behalf of the plaintiff to statements by him indicating otherwise.   All the witnesses may have testified truthfully.   Indeed, whether Buckner intended to return to Albia quite clearly depended upon whether he believed he would regain his health, so as to be able to resume

his work. In such case, he doubtless intended to return to his old job, which was kept open for him. On the other hand, if he had resigned himself to hopelessness as to his chances of life, he doubtless intended to remain with his sister, and to die in her home.

That he should be hopeful one day and hopeless the next is not an unusual experience for the sick. A consumptive is said to be usually more courageous than despondent. In any event, it may be true that Buckner may have made all these conflicting declarations of intention, precisely as testified to by opposing witnesses. The mere fact that he had come to the home of his sister either to recuperate or to die is not very persuasive of a change of domicile. We are impressed, also, that the question of his intent to change his domicile was governed more by his plans in the event of his recovery than by the fact, if such, that he had yielded hope, and had chosen to die in his sister's home. The facts that he had left his employment at Albia, not strictly of choice, but under the pressure of necessity, and that he had stipulated for his old job upon his return, and that he had left with his employer some of his personal effects, are circumstances which tend to negative an intent to change his domicile. Taking the evidence in all its circumstances, we think the finding of the trial court upon that issue has the support of a fair preponderance of the evidence.

IV. On the issue of the ownership of the passbooks, and on the question whether Buckner had made a gift of the same to his sister, the evidence on behalf of the alleged donee consisted largely of declarations made by the decedent to various witnesses that he had made such gift. There was also direct evidence of the making of the gift and the delivery thereof. This evidence was given by the daughter of the donee. The evidence on behalf of the plaintiff consisted, also, in part of declarations by the donor,

5. EVIDENCE: res gestae: declaration of ownership of bank passbooks.

and also of declarations and conduct of the alleged donee after the date of the alleged gift, and before and after the death of the donor, which declarations and conduct were inconsistent with her present claims. Briefly, the testimony on behalf of the plaintiff in resistance to the claim of gift tended to show that such claim was an afterthought, and made for the first time after the death of the decedent. At the close of plaintiff's evidence to such effect, the defendant attempted and offered to prove by various witnesses the declarations of herself while in possession of the passbooks, and before the death of the decedent, to the effect that they belonged to her, and that the decedent had given them to her. Objection was made to this line of testimony as being self-serving, incompetent, and immaterial, and these objections were sustained. It is now urged that the rulings of the trial court at this point were erroneous.

It is undoubtedly true that it was open to the defendant to prove her own declarations made while in possession of the property, explanatory of such possession and of the nature of her right thereto. This line of evidence is in the nature of *res gestae*, and is admissible as showing the animus and intent which attend the possession. Such evidence does not necessarily constitute proof of the fact thus claimed; neither is it permissible to the claimant to prove the origin of her alleged title by such declarations. We think that some of the evidence offered was admissible under this rule. It was admissible, also, for another reason. The evidence on behalf of the plaintiff tended to show that the claim now made by the defendant had never been made by her during the lifetime of the decedent, nor for some time thereafter. Such fact, if true, was a very material and proper fact for the plaintiff to prove and to put forward as a circumstance negativing strongly the good faith of the present claim. The defendant was entitled to rebut such alleged fact and the inferences arising therefrom. The

evidence offered was admissible for that purpose; not for
the purpose of establishing affirmatively any element of her
own case, but for the purpose only of negativing the damag-
ing circumstance of her silence during the life of the alleged
donor.     The importance of this circumstance found em-
phasis in the finding of the trial court, wherein it was said:
"And when the claim of a gift is not asserted until after
the death of the alleged donor, it should be sustained by
clear and satisfactory evidence of every element which is
requisite to constitute a gift."

The foregoing pronouncement is in accord with the au-
thorities.   It clearly indicates, however, that it was highly
material to the alleged donee to show that she claimed to be
such while the donor was yet alive.   On the question of the
admissibility of this evidence, see the following authorities:
*Thomas' Admr. v. Lewis,* 89 Va. 1; *Martin v. Martin,* 174
Ill. 371; *Harris v. Cable,* 113 Mich. 192; 12 R. C. L. 971;
20 Cyc. 1223.

It is urged by the appellee, however, that the objection
to this evidence was properly sustained, because it was not
offered as rebuttal evidence.   This claim is based upon a
statement of counsel for the defendant, at the time of the
offer, as follows:

"We want to recall Mrs. Wooten.   It is a matter of orig-
inal evidence."

The evidence was, in fact, offered after the close of
plaintiff's evidence.   The materiality of it was emphasized
by the testimony on behalf of plaintiff already given.   The
evidence offered partook of the character both of original
evidence and of rebuttal evidence.   In so far as it was *res
gestae,* it was original evidence.   In so far as it rebutted the
inference that the defendant's claim was an afterthought, of
recent origin, it was rebutting evidence.   There was no ob-
jection made to the offer on the ground that it was out of

time or place, or that it was not original, or

**6. APPEAL AND ERROR: review: exclusion of evidence: prejudicial error.** not rebuttal. We have considered much whether, in view of the trial to the court without a jury, the rulings could be deemed prejudicial. It must, in the first instance, be presumed such; and, as already indicated, this presumption is strongly confirmed by the fact that the findings of the court were in part based upon the absence of such evidence. We are constrained to say, therefore, that the exclusion of the evidence was error and prejudicial. For that reason, the judgment below is reversed, and a new trial ordered.—*Reversed and remanded.*

LADD, C. J., SALINGER and STEVENS, JJ., concur.