# Richmond

## DAVID EDWARD TIMBERLAKE'S ADMINISTRATOR v. KATE R. PUGH.

March 24, 1932.

Present, All the Justices.

398

The opinion states the case.

*W. R. Ashburn*, for the plaintiff in error.

*Tom E. Gilman*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action for damages suffered through a broken contract, in which the plaintiff has recovered a verdict and judgment.

David Edward Timberlake was an old bachelor who lived in Norfolk county, and who was worth about $700.00. His estate consisted, in the main, of a house and lot. In 1925, being in poor health, he took to live with him Mrs. Kate R. Pugh, plaintiff in the court below, and her four

children.  Mr. Timberlake was to give her and her children a home, in return for which she was to cook, wash for him, wait on him, look after his fowls and help him with a small garden.  Under this agreement she moved into his home in 1925, and continued there until February, 1929, when, due to some disagreement, she left.  On March 10, 1929, she returned to his home.  As an inducement, Timberlake promised that if she would serve him as she had theretofore done, he would will her his house and lot.  Pursuant thereto she did return, and continued to serve him until his death in August, 1929.  Timberlake left no will, hence this motion.

The facts are not in dispute.  It is certain that she went to live with him in 1925, left him in 1929, shortly thereafter returned, and continued to live there until his death, serving him faithfully.  From her evidence these are the conditions under which she came back:

"Timberlake promised that if she would return to his home and serve him in her former capacity during the remainder of his life, he would will her his property, consisting of the house and lot in which the parties were to live, and that she should have the same at his death; that pursuant to said promise she did return on March 10, 1929, and continued in her former capacity until his death, about four months thereafter.  The witness further testified that after her return to Timberlake's home he suffered from frequent attacks of asthma, and could do but very little work, and she cooked the meals, cleaned the house, tended the garden, served the deceased in his last illness, and paid one or two small grocery accounts, the cost of necessary medicine and one year's taxes out of monies which she earned from the sale of poultry raised on the place, and by certain housecleaning work performed by her in the community."

This evidence, narrative in form, amply establishes the contract, but to sustain a recovery it must be corroborated.  Code, section 6209.

■ Two facts, which are of some weight, immediately present themselves. Mrs. Pugh lived with Mr. Timberlake for about four years and left him for reasons satisfactory to herself, but in a short time returned. It is not unreasonable to assume that this was due to some added inducement. She did return and lived with him until he died the following August. In this period she paid one year's taxes. This she would probably not have done unless she believed that she had an interest in the real estate. It is true that she has here not been corroborated, but it is not necessary that she be corroborated on every point. *Burton's Ex'r v. Manson*, 142 Va. 500, 129 S. E. 356, 359; *Ratliff* v. *Jewell*, 153 Va. 315, 149 S. E. 409, 67 A. L. R. 1541.

R. A. Cordell was a neighbor and justice of the peace. He testified that "some months prior to his death, the exact date of which the witness could not recall, Timberlake called at his office and stated that he would like to have a will drawn leaving all of his property to Mrs. Pugh; that he advised deceased that he was not in a position to draw wills and suggested that an attorney be consulted."

W. H. Starkey, a Norfolk lawyer, said that in June, 1929, "Timberlake called upon him and stated that he would like to have a paper drawn conveying his property to Mrs. Pugh. That Timberlake was not very clear as to whether he wished a will prepared or a deed drawn; that nothing was said about any obligation to convey or devise the property to Mrs. Pugh; that witness was under the impression that deceased was to see him further about the matter and had expected to prepare the document, and upon hearing of the death of deceased he felt badly about the matter. Witness further testified that the plaintiff, Mrs. Pugh, so far as he knew, served the deceased as housekeeper and cook, and attended him in his last illness."

S. S. Spires heard Timberlake say that he did not want his relatives to have any of his property. Decedent left a

brother and a nephew, Arthur Dowdy, son of a deceased sister. Their testimony is that they were on friendly terms with him, but their relationship did not seem to be particularly intimate. Mrs. Dowdy, wife of the nephew, said that decedent told her shortly before his death that he arranged to get a new housekeeper because he could not bear to have the Pugh children in the house any longer.

This conflict has been settled by the jury's verdict.

On the general subject of corroboration it may be said that when evidence introduced is of probative value, its sufficiency should be submitted to the jury. If it has none, it should be stricken out. *Riddleberger* v. *Commonwealth*, 124 Va. 783, 97 S. E. 310; *Varner* v. *White*, 149 Va. 177, 140 S. E. 128. If the testimony is relevant, it must remain.

Decedent approached two gentlemen, one of them a justice of the peace and neighbor, the other a Norfolk lawyer, and asked each of them to draw a will conveying his property to Mrs. Pugh. The justice of the peace advised him that it would be wiser to have some lawyer do this work. Acting on this advice, he went to see a lawyer, made of him substantially the same request, but was put off, and died before the work was done.

When we come to consider the sufficiency of such evidence, it is not possible to formulate any hard and fast rule, but must "leave each case to be decided on its own peculiar facts and circumstances." *Burton's Ex'r* v. *Manson*, *supra*. *Davies* v. *Silvey*, 148 Va. 132, 138 S. E. 513; *Ratliff* v. *Jewell*, *supra*. Confirmation is not necessary for that removes all doubt, while corroboration only gives more strength than was had before. Crabb's English Synonyms. Circumstances alone are sometimes sufficient. *Rogers* v. *Rogers*, 89 N. J. Eq. 1, 104 Atl. 32.

"Clearly, it is not necessary that the corroborative evidence should of itself be sufficient to support a verdict,

for then there would be no need for the testimony sought to be corroborated." *Burton's Ex'r* v. *Manson, supra. Davies* v. *Silvey, supra.*

"Corroborative evidence is such evidence as tends in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings testified to by the witness whose evidence is sought to be corroborated, which allegation or issue, if unsupported, would be fatal to the case; and such corroborating evidence must, of itself, without the aid of any other evidence, exhibit its corroborative character by pointing with reasonable certainty to the allegation or issue which it supports, and such evidence will not be material unless the evidence sought to be corroborated itself supports the allegation or the point in issue." *Gildersleeve* v. *Atkinson*, 6 N. M. 250, 27 Pac. 477, 480, cited with approval in *Burton's Ex'r* v. *Manson, supra.*

In quantity this corroborative evidence must be more than a scintilla, but when it is, the issue is usually for the jury. The statute, however, is a wise one, and is designed to prevent fraud, and for that reason should not be whittled away. After all, as we have seen, each case must turn upon its own peculiar facts and circumstances.

The mere fact that Mrs. Pugh went to live with Mr. Timberlake and served him will not, of itself, support her claim. *Frizzell* v. *Frizzell*, 149 Va. 815, 141 S. E. 868; *Doughty* v. *Thornton*, 151 Va. 785, 145 S. E. 249. Her services may have been paid for as they were rendered, but it is a circumstance which, taken in connection with other evidence, may be of value. She had no other claim upon him, and his purpose, twice clearly made manifest, to will her his land would indicate that he was moved by some consideration, and fortifies and strengthens her evidence as to what that consideration was. The statements of Cordell and of Starkey in no wise emanate from her. Of course,

it may be said that he wanted to give her his property merely because of some transient whim, but such a conclusion would be guess-work, and would fit in with nothing. Her explanation is reasonable, and his conduct corroborates her statement.

The court in its instructions told the jury: "If you believe from the evidence that David E. Timberlake agreed with plaintiff that if she would serve him he would leave her his property at his death, and pursuant to this agreement she did serve him, the jury should find for the plaintiff for the fair value of the property he promised to leave."

Objection was made to this in that it did not refer to the corroboration made necessary by Code, section 6209. That section deals with evidence necessary to establish the contract and not with the contract itself. If it was made, plaintiff is entitled to recover. Proof of its execution is dealt with elsewhere.

In instruction 3, the court said: "The court instructs the jury that the testimony of Kate R. Pugh, as to any agreement or contract made by David Edward Timberlake upon which a recovery is sought herein, must be corroborated by other evidence from a disinterested party, before any recovery can be had hereon in this case; the court further instructs the jury that any statements made by the said David Edward Timberlake in his lifetime, as well as his actions, are to be received and considered by the jury in determining whether or not such a contract or agreement in fact existed."

This instruction tendered on behalf of the defendant was refused: "The court instructs the jury that unless they believe from the evidence that the contract with the deceased, testified to by Mrs. Pugh, has been established by a preponderance of the evidence by her testimony and the testimony of other witnesses corroborating her in this

particular, then they should find for the defendant. The court further instructs the jury that the testimony of Mrs. Pugh's standing alone and uncorroborated would not be sufficient to sustain a recovery."

It is not objectionable, but deals with matters already covered. In instruction 2 the court told the jury that there could be no recovery here "unless there was an express or implied contract, clearly proven in all its essential terms, providing for the compensation for which action is brought." Corroboration was covered by instruction 3.

We cannot say that the jury's verdict, confirmed by the court, was without evidence to support it, and so, for reasons stated, that judgment must be affirmed.

*Affirmed.*