GUENTHER and others, Respondents, vs. GUENTHER, Appellant.*

*December 6, 1943—January 18, 1944.*

* Motion for rehearing denied, with $25 costs, on March 14, 1944.

For the appellant there was a brief by *G. F. Clifford* of Green Bay and *Albert Krugmeier* of Appleton, and oral argument by *Mr. Clifford*.

FAIRCHILD, J. There is no question but that the bonds and cash, the subject of this litigation, were placed in the appellant's possession as early as December 25, 1937. If a gift was then made, the claim of the respondents can have no foundation and the conclusion of the court that an express trust was created is wrong. On December 22, 1937, C. O. Guenther, then eighty-six years of age and in ill-health, wrote to appellant, his nephew, asking him to come to see him "right away so that you can get to see me while I am yet alive to arrange things." Johanna Volkmann, Guenther's housekeeper, testified that a few days before this letter was posted, Guenther had given her an envelope containing the bonds to keep for him as he was going to write Fred, the appellant, to come from Appleton and that he intended to give him the bonds.

Appellant received the letter on December 24, 1937, and that afternoon drove to his uncle's farm near Egg Harbor, Wisconsin, arriving there around suppertime. They talked until around 12 o'clock. Then, Christmas morning, the uncle handed the bonds (two $1,000 Victory notes due at that time and two $500 government bonds not yet due) and about $300 in cash, to appellant. After breakfast, Christmas morning, appellant returned to Appleton. The claim of the creation of a trust advanced and relied on by respondents is met first by declarations made by appellant immediately after the property was placed in his possession. In these declarations, appellant asserted an absolute gift to him. He showed the bonds to his wife and told her he had received them from his uncle as a Christmas gift. Such declarations of ownership by a donee immediately after the gift and before the donor's death under similar circumstances have been considered as admissible evidence. 24 Am. Jur. p. 797, sec. 128; *Stevens v. People's Savings Bank,* 185 Iowa, 619, 171 N. W. 130. Subsequently he sold the two $1,000 bonds to a bank in Appleton and

deposited the money in his personal account. After telling his family that the bonds and cash had been given to him, upon the advice of his father-in-law who anticipated a possible questioning of the validity of the gift by some of the other relatives, appellant on January 5, 1938, asked his uncle to confirm the gift in writing. The following memorandum was then written by the uncle and witnessed by his housekeeper, Johanna Volkmann: "I, C. O. Guenther, do order that the Victory notes remain in the hands of Fred Guenther at his disposal." It appears that just before this, and on December 29, 1937, Guenther had drawn and duly executed his will in which there is a clause suggesting that the right was given to appellant to have a portion of the uncle's estate if he preferred such a division to the gift; but that in the event of his retaining the bonds and cash, the remainder of the estate was to be divided between the remaining nieces and nephews, thirteen in number. There is nothing in either the writing of the will or the language used in the so-called confirmation of January 5, 1938, that has the effect of destroying or impairing the intent actuating the donor when he delivered the personal property to appellant or of revoking the act then performed in consummation of such intent.

The respondents' claim is further refuted. On January 31, 1938, pursuant to advice of an attorney, Mr. Albert Krugmeier, who thought that the note of January 5th was not entirely free from ambiguity, appellant asked his uncle to sign the following paper: "I hereby acknowledge and confirm my previous delivery of United States government bonds of the face value of $3,000 and cash amounting to $320 to my nephew Fred Guenther, of Appleton, as a gift and which bonds and cash are now in his possession, and declare the same to be his absolute property." This was signed by C. O. Guenther, witnessed by the housekeeper and Carl Spiegl.

The facts thus far referred to are consistent with and fulfil all the requirements of a gift *inter vivos*. The declarations and admissions of the donor both before and after the alleged

gift serve the purpose of establishing the gift. They are cor-roborative of other testimony, 28 C. J. p. 675, sec. 80, and show an intent to part with the title. They also show that delivery was made of the subject matter to the donee and that the donor ended his dominion and control over the property. *Madison Trust Co. v. Skogstrom,* 222 Wis. 585, 269 N. W. 249; *Miller v. Slater,* 154 Wis. 35, 142 N. W. 124.

On the other hand, the facts relied upon by respondents to overthrow the theory of a gift and show that the delivery was in pursuance of an express trust, all came to pass subsequent to the time when the facts sustaining the claim of a complete transfer to appellant occurred. The respondents urge that the will, executed December 29, 1937, four days after the de-livery and seven days preceding the first paper of confirmation, indicates an intention of the uncle to create a trust. The im-portant provision of that document to which reference has al-ready been made reads:

"I now have as part of my estate United States bonds for the sum of two thousand dollars . . . and are now in the possession of Fred Guenther, son of my brother, William Guenther, and it is my will that said amount should be divided equally between the heirs.

"Should it transpire that said bonds do not become a part of my estate for any reason, then it is my will that said Fred Guenther should not take a share out of my estate but that said estate should be divided equally between the remaining thirteen herein named."

That provision is not inconsistent with the delivery of the bonds and the giving of complete control and dominion over them to appellant. And when read in connection with the confirmation of January 5, 1938, the will does not furnish any support for respondents' contention. It would not change the executed gift into a conditional one by permitting the ap-pellant to return the bonds to the estate and take a one-fourteenth share in the estate in exchange. The choice was

his.   He had them "at his disposal."   But uncertainty, if any could be said to exist, was effectively eliminated by the instrument dated January 31, 1938.

C. O. Guenther died September 26, 1938, and in the probate proceedings in the county court on final settlement the bonds were excluded from the estate by the judgment of the county court.   Appellant did not seek to and was not allowed to participate in the division of the estate otherwise than to retain the gift.   Under the evidence it cannot be contended seriously that the uncle intended to create a trust in favor of respondents and also to exclude the appellant from a share in the estate.   The will and the later writings were drawn and executed before the respondents became interested or active in the matter of the disposition of the uncle's property.   Now to fail to construe the written evidence as indicating an intention to give the appellant the absolute right of retaining the bonds and cash would require overlooking what amounts to a plain and declared intention on the part of the donor to make a gift.

At a number of points in the findings some confusion appears and questions are sought to be raised by appellant which are not necessary to treat in determining the principal issue. The will, as construed by the county court, provides that if the $2,000 in bonds are part of the estate, they shall be divided among the fourteen beneficiaries named in the will.   Yet the respondents are here contending that the original trust was only for the benefit of the six children of William Guenther, the deceased's brother.   From the record it also clearly appears that the claim of an express trust is based on events transpiring months after the gift was made and six months after the written confirmation of the gift dated January 31, 1938.   During that period, it seems to have been generally understood that appellant, at all times, was claiming an absolute gift to him. And there was no attempt to exercise control over the bonds during that time by the donor.   It was not until August 18,

1938, that the donor delivered to two of the respondents, Otto and Richard Guenther, this statement written on the back of an envelope: "I, C. O. Guenther . . . gave to Fred Guenther two $1,000 Victory notes and two $500 coupon notes to the estate of William Guenther of Appleton." On August 26, 1938, the uncle signed two documents which are alike in content drawn by Mr. Robert Schoenbrunn, a lawyer of Sturgeon Bay, who acted for these two respondents. In substance they direct "that my government securities in the amount of three thousand dollars plus interest thereon be divided equally and immediately among the heirs of my deceased brother, William Guenther. These government securities were given by me to my nephew Fred Guenther of Appleton, Wisconsin, he to deposit such in a bank at Appleton, Wisconsin, for safekeeping. . . . This instrument for all purposes and intents is to be considered as an immediate gift of such securities to the heirs of the late William Guenther, deceased." One of the documents identifies the bonds more definitely than the other, this having been decided upon as a desirable precaution. It also appears that on September 7, 1938, at the instance of the two respondents, the uncle wrote the appellant, telling him that the two brothers were at his house to get the matter concerning the bonds adjusted and saying that he was willing to come down to Appleton. No trip was made by the uncle. The appellant called upon his uncle but nothing appears to have been done about the bonds on that visit although there is evidence that Otto and appellant both talked with their uncle, C. O. Guenther. The most that can be made out of the declarations of August 26, 1938, is that they are attempts by the uncle to revoke the gift. It is possible that by this time the uncle felt that the gift to appellant was too generous or should not have been made. It is evident that other heirs, anxious to share in the bonds, made their desires known, and it may be that the uncle wished to satisfy everyone if he could. But

such a purpose coming into existence after an absolute gift had been made, could not accomplish its revocation. A gift once made cannot be revoked. *Johnson v. Andreassen,* 227 Wis. 415, 278 N. W. 877; *Opitz v. Karel,* 118 Wis. 527, 95 N. W. 948; *Kelly v. Beers,* 194 N. Y. 60, 86 N. E. 985; 12 R. C. L. p. 952, sec. 27. Nor can an absolute gift "be cut down by implication into a trust merely because the donor hoped and believed at the time the gift was made that the donee would share the beneficial interest of the property with him or with a third person" or "by events transpiring after it is made, be metamorphosed into a trust." *Vickers v. Vickers,* 133 Ga. 383, 384, 65 S. E. 885, 24 L. R. A. (N. S.) 1043.

The findings of fraud on the part of the appellant and of the existence of a trust are against the great weight and clear preponderance of the evidence. An absolute gift was made on December 25, 1937. The trial court erred in considering the declarations of August, 1938, as bearing on the nature of the delivery of the bonds made six months previously. 2 Jones, Evidence, p. 1686, sec. 915. These subsequent events were unsuccessful attempts to revoke an absolute gift. The conclusion should have been that a gift to appellant was made.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.