## Staunton

H. M. Brooks, Administrator, Etc. v. Marguerite Worthington.

September 10, 1965.

Record No. 6008.

Present, All the Justices.

*S. W. Tucker* (*Henry L. Marsh, III*, on brief), for the plaintiff in error.

*Frederick T. Gray* (*Ernest P. Gates; Williams, Mullen & Christian*, on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

Plaintiff herein, H. M. Brooks, administrator of the estate of Anna Laura Lindsay, deceased, instituted this action to recover the amount of an alleged loan, with interest, made by his decedent to the defendant, Marguerite Worthington. In her grounds of defense, defendant denied the alleged indebtedness and asserted that the money turned over to her by plaintiff's decedent was a gift based on an agreement and not a loan.

A jury trial resulted in a verdict for the defendant and judgment was entered thereon. We granted plaintiff a writ of error.

Plaintiff contends that the court erred in (1) refusing to strike certain hearsay evidence; (2) overruling his motion to strike defendant's evidence for lack of corroboration; and (3) granting certain instructions.

Plaintiff's decedent, Miss Anna Laura Lindsay, who died on November 11, 1961, at the age of 82, was a retired teacher from Virginia State College. The defendant has been a member of the college faculty since 1925, and a close friendship had developed between her and the decedent. On several occasions, when the defendant was unable to obtain living quarters on the college campus, she lived in decedent's home.

Defendant testified that decedent was concerned over the plan of

the college to acquire her home as a part of its expansion program; that decedent suggested to her on several occasions that since they were both alone they should acquire a home where they could live together and she would not be worried about a place to live should the college take over her property; that decedent offered to furnish the money to acquire a home if she (defendant) would take care of the expense required to make it into a suitable place for both of them to live, and at decedent's death it would be her (defendant's) property, since the title would be taken in her name; that she rejected the proposal each time it was made, but after decedent found a home which could be purchased for $7,500 she agreed to go along; that on July 22, 1959, decedent cashed some bonds, withdrew $894.15 from her savings account, and deposited the proceeds, $8,486.15, to her (defendant's) bank account; that she employed William Earle White, a prominent member of the Petersburg bar and a past president of the Virginia State Bar, who had represented the decedent over a period of years, to examine the title and represent her in closing the transaction; that decedent accompanied her to Mr. White's office when the transaction was closed; that, pursuant to the agreement, she had the home repaired and remodeled at a cost to her of $7,000, which was secured by a deed of trust on the property; and that neither the plaintiff's decedent nor anyone acting for her during her lifetime had requested her to pay back the money that was turned over to her as a gift to purchase the home.

Mr. White testified that he had represented the plaintiff's decedent over a long period of time; that he was employed by the defendant to examine the title to the property and to close the transaction; that defendant paid for the property and the expenses incident to acquiring the title; that decedent accompanied the defendant to his office on the day the transaction was closed; that defendant borrowed $4,000 from the Petersburg Savings and Loan Corporation, which was secured by a deed of trust on the property, but this loan was subsequently cancelled and a new deed of trust in the amount of $7,000 was placed against it; that on a later day the defendant asked him if she had to report as income the money she had received as a gift from the decedent, and he told her "there would be no income tax involvement" in the case of a gift.

Dr. Robert P. Daniel, president of Virginia State College, testified that decedent had expressed concern to him about the plan of the college to take over her property as a part of its expansion program; and that she was a very careful business woman.

Mr. James B. Cephas, treasurer-comptroller of the college, testified that decedent was quite disturbed over the plan of the college to take over her property and talked to him concerning it on several occasions; that a very close relationship existed between decedent and the defendant; that when the defendant lived in decedent's home it was more in the nature of a "family unit" than one of landlord and tenant; and that decedent was very meticulous in all of her business affairs.

Julius C. Lienhard, a contractor, testified that he performed for the defendant the work of "practically making the house over."

Plaintiff introduced in evidence several exhibits, among which was an adding machine tape listing the amounts of the savings bonds cashed and the amount withdrawn from his decedent's savings account, which showed a total of $8,486.15. At the foot of the tape plaintiff's decedent had written: "Paid to M. Worthington July 22, 1959. Anna L. Lindsay," and Mrs. Worthington wrote thereon: "Received payment July 22, 1959/ Marguerite L. Worthington." At some subsequent time plaintiff's decedent made on the margin of the tape a calculation of interest on the $8,486.15.

In decedent's cancelled savings account book she made a notation that Mrs. Worthington had "borrowed" the sum of $8,486.15 and a calculation of interest was also noted thereon. However, the evidence does not show when the notations were made.

Decedent's last will and testament, which was written in her own handwriting and dated October 9, 1961, read in part as follows:

"The amount due from Mrs. Marguerite Worthington borrowed. Add to Esttate. [sic] On—July 22 1959 8486.15 Princ. Marguerite Ann Chew is to receive the full amount due from Mrs. Worthington * * *."

Marguerite Ann Chew was a third cousin and godchild of decedent and had lived in the Lindsay home since she was 14 years old. She was 18 at the time the will was written.

Plaintiff testified that he had been authorized by the decedent, approximately a year and a half before her death, to collect several loans she had made, which were all evidenced by secured or unsecured notes save one, in the amount of $800; that in April, 1961, she told him that defendant had borrowed some money from her but she did not authorize him to collect it until after July 22, 1961; that he attempted to see the defendant on two occasions to collect the alleged loan but was unable to find her at home; and that he did not make de-

mand of the defendant to pay the loan until after his qualification on decedent's estate.

F. R. Wood, an assistant professor at Virginia State, who was named executor in decedent's will but did not qualify, testified that the decedent, in July 1960, told him that she had loaned the defendant "a certain amount of money" and that she had not paid it when it became due.

■ Plaintiff first says that the court erred in not striking the testimony of Mr. White concerning the defendant's inquiry as to whether she would have to report the gift from the decedent as income on her tax returns, when it developed on cross-examination that decedent was not present when the inquiry was made of him. We do not agree with plaintiff's contention.

It has been generally held that evidence of declarations of ownership by a donee, while in possession of personal property, and before donor's death, are admissible even though they operate in donee's favor. However, such declarations are admissible to show that the donee claimed the property as a gift, but not as proof that a gift was made. *Thomas' Adm'r v. Lewis*, 89 Va. 1, 57, 15 S.E. 389, 396, 18 L. R. A. 170, 37 Am. St. Rep. 848; *Martin v. Martin*, 174 Ill. 371, 51 N.E. 691, 693, 694, 66 Am. St. Rep. 290; *Stevens v. Peoples Savings Bank*, 185 Iowa 619, 171 N.W. 130, 133; *Guenther v. Guenther*, 244 Wis. 386, 12 N.W. 2d 727, 729; 24 Am. Jur., Gifts, § 128, p. 797; 31A C. J. S., Evidence, § 250, pp. 665, 666. See also *Depue v. Steber*, 89 W. Va. 78, 108 S.E. 590, 592, where the Supreme Court of Appeals of West Virginia commented on the case of *Thomas' Adm'r v. Lewis, supra*, with which we are in full accord.

The defendant was in possession of the funds deposited to her bank account by the decedent, which she claimed as a gift, and it was not disputed that decedent was alive when the conversation took place with Mr. White. The evidence complained of is not obnoxious to the hearsay rule nor excluded by it even though it was favorable to her. Defendant's declaration was admissible to show that she claimed the money turned over to her as a gift, but not as proof that the gift was made.

■ Plaintiff says that the defendant's testimony was not corroborated, in accordance with the requirements of Code § 8-286, and that the trial court erred in not striking her evidence.

Code § 8-286 provides in part as follows:

"In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee,

trustee, executor, administrator, heir or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony. * * *"

In considering whether the testimony of an adverse or interested party has been corroborated pursuant to the requirement of the statute, it is not possible to formulate any hard and fast rule, and each case must be decided upon its own facts and circumstances. *Burton's Ex'r* v. *Manson*, 142 Va. 500, 509, 129 S.E. 356, 359; *Davies* v. *Silvey*, 148 Va. 132, 137, 138 S.E. 513, 514; *Clay* v. *Clay*, 196 Va. 997, 1002, 86 S.E. 2d 812, 815.

It is not necessary that the corroborative evidence should of itself be sufficient to support a verdict, for then there would be no need for the adverse or interested party's testimony to be corroborated. *Burton's Ex'r* v. *Manson, supra,* 142 Va. at p. 508, 129 S.E. at p. 359; *Davies* v. *Silvey, supra.* "Confirmation is not necessary for that removes all doubt, while corroboration only gives more strength than was had before." *Timberlake's Adm'r* v. *Pugh,* 158 Va. 397, 402, 163 S.E. 402, 404.

"Corroborating evidence is such evidence as tends to confirm and strengthen the testimony of the witness sought to be corroborated—that is, such as tends to show the truth, or the probability of its truth." *Varner* v. *White,* 149 Va. 177, 185, 140 S.E. 128, 130; *Burton's Ex'r* v. *Manson, supra; Davies* v. *Silvey, supra.* Such evidence need not emanate from other witnesses but may be furnished by surrounding circumstances adequately established. *Martin* v. *Martin,* 202 Va. 769, 774, 120 S.E. 2d 471, 475; *Arwood* v. *Hill's Adm'r,* 135 Va. 235, 242, 117 S.E. 603, 605; *Leckie* v. *Lynchburg Trust, Etc., Bank,* 191 Va. 360, 370, 60 S.E. 2d 923, 928. Nor is it essential that an adverse or interested party's testimony be corroborated on all material points. *Rorer* v. *Taylor,* 182 Va. 49, 53, 27 S.E. 2d 923, 925; *Morrison* v. *Morrison,* 174 Va. 58, 66, 4 S.E. 2d 776, 779.

In *Timberlake's Adm'r* v. *Pugh, supra,* 158 Va. at pp. 402, 403, 163 S.E. at p. 404, this Court stated:

"On the general subject of corroboration it may be said that when evidence is introduced of probative value, its sufficiency should be submitted to the jury. * * *

"In quantity this corroborative evidence must be more than a scintilla, but when it is, the issue is usually for the jury."

■ In corroboration of defendant's testimony, the evidence of other witnesses shows that the defendant and decedent had lived to-

gether on several occasions and were close friends; that the decedent was fearful of the college taking over her property and she would have no home or anyone to look after her in her declining years; that decedent furnished the money which was used to purchase the property; that decedent was present in the office of Mr. White when defendant acquired title to the property, and although he had been her attorney over a period of years she did not mention to him that she had provided the money for the purchase of the property or seek his advice as to how best to obtain evidence of a loan; that decedent was a good business woman and usually required the parties to whom she made loans to give her notes as evidence of the debt; that neither the decedent nor her agent had requested the defendant to repay the money at any time during decedent's lifetime; that while decedent was living defendant claimed that the money used by her to purchase the home was a gift; and that she had repaired and remodeled the property at great expense to her.

The facts and circumstances related above amount to more than a scintilla of evidence, and they give strength to and tend to produce belief and confidence in the truth of the testimony of the defendant. The corroborative facts support defendant's testimony that decedent had a special interest in her acquiring the home and they provide ample reason and motive for decedent to enter into the agreement related by the defendant. Hence, a factual question was presented for the jury and the trial court did not err in refusing to strike defendant's evidence for lack of corroboration.

█ Plaintiff says that the court erred in granting instruction "G," on which the jury stated it found its verdict. It reads as follows:

"The Court instructs the jury that if you believe from the evidence that an agreement existed between Mrs. Worthington and Mrs. Lindsay whereby Mrs. Lindsay was to provide funds for the purchase of the house in question and Mrs. Worthington was to provide funds for its repair and preparation as a home for the two of them, and if you further believe that Mrs. Worthington did provide funds for the repair and preparation of the home and had it available as a home for herself and Mrs. Lindsay, then legally Mrs. Lindsay could not change her mind as to the nature of the transaction and decide that Mrs. Worthington should repay her for the money advanced, and your verdict must be for the defendant."

Objection was made to this instruction on the ground that it did not mention the corroboration required by Code § 8-286. We do not

agree with plaintiff's contention. That section deals with evidence necessary to establish the agreement and not with the agreement itself. The evidence required to prove that an agreement was entered into was covered by instruction No. 1, which told the jury "that a judgment against the estate of a person now deceased may not be founded on the uncorroborated testimony of the opposing party." See *Timberlake's Adm'r* v. *Pugh, supra,* 158 Va. at p. 404, 163 S.E. at pp. 404, 405, where this Court considered the same objection to a similar instruction and held that the failure to state that the evidence must be corroborated was not error because it was covered by another instruction.

Even though the jury returned its verdict based on factual statements as set out in instruction "G," we cannot say that they disregarded the necessity of defendant's testimony being corroborated, which was plainly told to them in instruction No. 1.

Instruction "B" told the jury that if they believed from a preponderance of the evidence that plaintiff's decedent did deliver the money to the defendant as a gift, conditioned upon the defendant's performing certain agreements, and she had fully performed the agreements, then they must find their verdict for the defendant.

We find no error in the instruction, but even if there was, it would not constitute reversible error, because the jury's verdict shows that it was founded on the factual situation set out in instruction "G."

Instruction "A" told the jury that the plaintiff had the burden of proving his case by a preponderance of the evidence. We hold that this instruction correctly stated the law, as the burden of proof is always on the plaintiff to establish his case by a preponderance of the evidence. The duty of going forward with the evidence shifts to the defendant only when the plaintiff has established his case by evidence, but the burden of proof never shifts. See *Redford* v. *Booker,* 166 Va. 561, 569, 185 S.E. 879, 883; *Darden* v. *Murphy,* 176 Va. 511, 514-517, 11 S.E. 2d 579, 580, 581.

For the reasons stated, the judgment is

*Affirmed.*