## DEBORAH J. JOHNSON, ADMINISTRATOR, ETC.

## v.

## JOSEPH DWAYNE SMITH, ET AL.

Record No. 901049

April 19, 1991

Present: Carrico, C.J., Stephenson, Russell, Whiting, Lacy, and Hassell, JJ., and Harrison, Retired Justice

*Peter C. Burnett (Burnett & Williams*, on brief), for appellant.
*William G. McMurtie (John J. Wall*, on brief), for appellees.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

In this wrongful death case, the jury returned a verdict in favor of the plaintiff-administrator. The sole question for decision is whether the trial court erred in refusing to set the verdict aside as inadequate.

James Melvin Johnson was killed on June 30, 1988, when the motorcycle he was operating and a van driven by Joseph Dwayne Smith collided at the intersection of Routes 287 and 854 in Loudoun County. Johnson and Smith were proceeding in opposite directions on Route 287, and the collision occurred when Smith attempted to make a left turn onto Route 854. Smith told the investigating state trooper that he "never saw the motorcycle before impact."

Johnson's widow, Deborah J. Johnson, qualified as his administrator and filed a motion for judgment against Smith and the owner of the van, Leesburg Southern Electric, Inc. (the defendants), seeking damages on behalf of herself and her two children, Keri, aged 11 at time of trial, and Jamie, aged 5.

For the five years prior to his death, Johnson had been employed by Amtrak as a commissary worker earning $26,915 annually. His supervisor testified he was a "model employee." An ex-

pert witness estimated the loss of income resulting from Johnson's death at $900,000, exclusive of the amount Johnson earned from a lawn maintenance business he conducted on the side.

Twenty-eight years old at the time of the accident, Johnson had enjoyed good health and led an active life. He was an attentive father, "the best," and was often observed playing with his children "in the yard." He "loved [Keri] very much." Jamie was "daddy's girl" and "preferred to be with him most of the time." He was handy with tools and "just did everything" around the house.

Code § 8.01-52 provides in part that, in a wrongful death case, "[t]he verdict or judgment of the court trying the case without a jury shall include, but may not be limited to," damages for the following:

> 1. Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent;
> 2. Compensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent;
> 3. Expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death;
> 4. Reasonable funeral expenses; and
> 5. Punitive damages may be recovered for willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others.

Incorporating elements 1, 2, and 4, the trial court submitted the issue of damages to the jury in an instruction which required the jury to return a special verdict. Using the form prescribed by the instruction, the jury awarded Johnson's widow $50,000 for lost income, $20,000 for lost services and protection, $5,788.45 for funeral expenses, and nothing for sorrow, mental anguish, and solace. The jury awarded each child $30,000 for lost income, nothing for sorrow, mental anguish, and solace, and nothing for lost services and protection. The trial court denied the plaintiff's motion to set aside the verdict on the ground of inadequacy and entered judgment on the verdict.

The plaintiff contends that the jury award is inadequate as a matter of law and, hence, that the trial court erred in refusing to

set the verdict aside. The plaintiff argues that the award of $110,000 for lost income is "inadequate on its face," representing only about two years of decedent's income for the widow and only a little more than one year for each child. Furthermore, the plaintiff maintains, the jury's failure to consider all the proper elements of damage is "most glaringly demonstrated" by the award of nothing to any of the survivors for sorrow, mental anguish, and solace and nothing to the children for lost services and protection.

In support of the jury's action, the defendants say that their cross-examination of the plaintiff's expert witness raised "serious questions as to the soundness of his opinion concerning the projected lost income of the decedent." Further, the defendants maintain that in their cross-examination of Johnson's widow, they

challenged the plaintiff's assertions as to the stability of the decedent's job by inquiring as to the amounts listed on their tax returns for deductions taken by the decedent for job-hunting expenses . . . . Notwithstanding the presence of these deductions on these returns, the plaintiff denied that the decedent had been jobhunting . . . . In addition, defendants' counsel also challenged allegations by the plaintiff as to the increased financial burden caused by the death of the decedent, particularly with respect to maintaining the house and providing for child care. For example, in response to a question concerning the assistance provided by her family, the plaintiff admitted that she received a lot of financial help from both family and friends . . . . With respect to use of her wood stove, which the plaintiff had previously testified that she did not use because she could not afford the wood, the plaintiff denied that she gratuitously received wood from her brother and his friends on more than one occasion, even when confronted with a prior statement to this effect in her deposition . . . .

This recitation is nothing more than an exercise in nit-picking. Furthermore, it is badly flawed; it is largely unsupported by the record but, even if supported, it would be insufficient as a matter of law to justify what the jury did in this case.*

* Completely unsupported by the record and, hence, entitled to no consideration is this statement appearing in the defendants' brief: "[T]he trial of this action was [not] devoid of 'guideposts to the truth' — i.e., gestures and nuances communicated by the witnesses, such

■ In pertinent part, Code § 8.01-383 provides: "In any civil case or proceeding, the court before which a trial by jury is had, may grant a new trial. . . . A new trial may be granted as well where the damages awarded are too small as where they are excessive."

■ This statute vests trial judges with authority to exercise discretion in supervising the verdicts of juries to prevent miscarriages of justice. The law intends that the authority should be used and that judges should be more than mere referees between litigating parties. The ultimate test is whether the discretion has been abused. *Smithey* v. *Refining Company*, 203 Va. 142, 148, 122 S.E.2d 872, 877 (1961).

> [I]f it appears that the verdict is so [inadequate] as to shock the conscience of the court and to create the impression that the jury has been influenced by passion, corruption or prejudice, *or has misconceived or misunderstood the facts or the law*, or if the award is so out of proportion to the injuries suffered to suggest that it is not the product of a fair and impartial decision, then it becomes the plain duty of the judge, acting within his legal authority, to correct the injustice.

*Id.* at 146, 122 S.E.2d at 875-76 (citations omitted) (emphasis added).

If the only issue on appeal concerned the adequacy of the jury's award of $110,000 for lost income, we might in good conscience dispose of the issue on the basis that the jury simply found unconvincing the $900,000 loss estimate made by the plaintiff's expert witness. But that is not the only issue in the case.

■ When we consider the other issues and see that the jury awarded Johnson's widow and children nothing for sorrow, mental anguish, and solace, we find it impossible to conceive of a rational basis for the denial. And when we observe that the jury awarded the children nothing for lost services and protection, we are unable to describe the denial as anything but incomprehensible. This action by the jury renders the entire verdict suspect and leads to the conclusion that the jury must have misconceived or misunderstood

---

as the plaintiff's continuous dabbing of a tissue at an eye that was always dry, or the plaintiff's combative and aggressive manner while responding to questions on the witness stand, or the laughter of the plaintiff's daughter while beginning her testimony."

the facts or the law. Hence, the trial court erred in refusing to set the verdict aside.

■ A new trial is necessary. The defendants contend that the new trial should encompass the issue of liability as well as the question of damages. The plaintiff contends that the trial should be limited to the question of damages. We agree with the plaintiff. In our view, the evidence in this case is "insufficient to sustain a verdict finding the defendant[s] *not* liable." *Rawle* v. *McIlhenny*, 163 Va. 735, 748, 177 S.E. 214, 220 (1934) (emphasis in original). In this situation, it is proper to limit the new trial to "the question of the amount of the damages." *Id.*

■ If requested upon retrial, the court should not grant an instruction requiring the jury to return a special verdict with respect to all the elements of damage the plaintiff may be entitled to recover under Code § 8.01-52, quoted *supra*. While this Code section provides that a verdict in a wrongful death case shall specifically state the amounts awarded for the care, treatment, and hospitalization of the deceased, for funeral expenses, and for punitive damages, the section provides no authority for a special verdict relating to damages for solace, lost income, and lost services and protection.

■ The use of special verdicts in negligence cases is "unknown to our practice," *Ches. & O. R. Co.* v. *Meadows*, 119 Va. 33, 44, 89 S.E. 244, 247 (1916), and, unless the parties agree otherwise, we see no reason to require such a verdict where negligence results in death and causes sorrow, mental anguish, lost income, and lost services and protection. Rather, we think that damages for these elements should be awarded in a lump sum and distributed to the beneficiaries according to Code § 8.01-54.

For the error in refusing to set the verdict aside, we will reverse the judgment of the trial court, vacate the verdict, and remand the case for a new trial limited to the question of damages.

*Reversed and remanded.*