## CIRCUIT COURT OF THE CITY OF RICHMOND

Tony E. Royster
and Randall A. Royster,
a/k/a Randall L. Royster,
Co-Executors of the Estate of
Madeline A. Royster,
Deceased

    v.

James A. Shield, Jr.,
Tucker Psychiatric Clinic, Inc.,
and Chippenham Hospital, Inc.,
d/b/a Chippenham Medical Center

June 24, 1994

BY JUDGE MELVIN R. HUGHES, JR.

In this wrongful death action for medical malpractice, the matter before the court is plaintiffs' Motion for New Trial on the Issue of Damages.

On February 18, 1991, plaintiffs' decedent, Madeline A. Royster (Mrs. Royster), was admitted to the Tucker Psychiatric Clinic at Chippenham Medical Center. The admission was ordered by the defendant, James A. Shield, Jr., M.D., for treatment of major depressive episode. On February 27, 1991, while still hospitalized, Mrs. Royster committed suicide.

At trial, the issue of liability was highly contested. Both parties presented evidence on the issue of whether Dr. Shield violated the applicable standard of care and caused Mrs. Royster's death. Dr. Fawcett, a witness for the plaintiffs, testified that Dr. Shield, a psychiatrist, violated the standard of care in his treatment of Mrs. Royster. He also testified that, although Mrs. Royster killed herself as a result of a psychotic impulse, the psychotic element of her illness was not apparent prior to the suicide. Dr. Shield and Dr. Buckman, a witness for the defendants, gave testimony as to why Mrs. Royster did not appear to be an acute suicide risk.

A wrongful death action was instituted by Tony E. Royster and Randall A. Royster, co-executors of Mrs. Royster's estate, against Dr. Shield, Tucker Psychiatric Clinic, Dr. Shield's medical group, and Chippenham Medical Center (Chippenham Hospital). Plaintiff claimed that Dr. Shield, as well as the nurses and employees of Chippenham Hospital, were negligent in the care and treatment of Mrs. Royster. The case was tried on April 12-14, 1994, before a jury. At the end of the plaintiffs' case in chief, on Chippenham Hospital's motion to strike, the Court found that there was no issue for the jury to determine regarding negligence of any of the nurses and employees attending Mrs. Royster and dismissed the hospital from the case. The case proceeded and the jury rendered a verdict in plaintiffs' favor finding that Dr. Shield acted negligently in his treatment of Mrs. Royster and awarded damages in the amount of $4,000.00, the stipulated funeral expenses.

After the verdict was announced, the Court, at plaintiffs' request, polled the jury. In response to the Court's question, "Is this your verdict?", one juror, Mrs. Thorpe, replied, "Yes, but I have a question, was there another option as far as awarding damages other than the $4,000.00?"; another juror, Ms. Simon, responded: "Yes, but we also had the same question." The Court then asked the jury to go back into the jury room, and following a discussion with counsel, the Court re-polled the jury asking each of them whether it was their intent to award only $4,000.00 for the funeral expenses. Each juror responded in the affirmative.

The Court instructed the jury on what it could consider in determining damages as follows:

> If you find your verdict for the plaintiffs, then in determining the damages to which they are entitled, you may consider, but are not limited to, any of the following which you believe by the greater weight of the evidence were caused by the death of Madeline A. Royster as damages suffered by the beneficiaries:
>
> (1) Any sorrow, mental anguish, and loss of solace suffered by the beneficiaries. Solace may include society, companionship, comfort, guidance, kindly offices and advices of Madeline A. Royster; and
>
> (2) Any reasonably expected loss of services, protection, care and assistance which Madeline A. Royster provided to the beneficiaries.

> If you award damages, you may distribute these damages be-
> tween Randall A. Royster, Timothy Royster, and Tony E. Roys-
> ter, sons.
>
> If you find your verdict for the plaintiffs, you shall award
> damages for reasonable funeral expenses.

Plaintiffs offered the testimony of the decedent's three sons, the statu-
tory beneficiaries. The beneficiaries gave emotionally charged and tearful
testimony of the sorrow and grief they suffered from the death of their
mother. This testimony was uncontroverted and unimpeached. The defen-
dant did not offer any meaningful cross-examination or affirmative evi-
dence to rebut the beneficiaries' sorrow.

Plaintiffs have moved the Court to set aside the verdict and grant a new
trial on the issue of damages on the ground that the damages awarded are
legally inadequate because the jury did not award anything for sorrow,
mental anguish and solace. Specifically, plaintiffs assert that the verdict
award of $4,000.00 represents compensation for funeral expenses only.
Plaintiffs argue that they presented uncontroverted and complete evidence
that the beneficiaries suffered sorrow, mental anguish, and loss of solace
resulting from their mother's death, and that the jury had a duty to con-
sider and fairly compensate them for such damages. Plaintiffs urge the
court to set aside the verdict as legally inadequate and to order a new trial
limited to the issue of damages. They rely heavily on *Johnson v. Smith*,
241 Va. 396 (1991), also a wrongful death case, where the jury's verdict,
awarding nothing for sorrow, mental anguish and solace, was found to be
inadequate.

Defendants counter that, in light of the highly contested evidence con-
cerning liability, the jury's minimal verdict should be treated as a finding
for the defendant. In addition, defendants argue that the jury properly
found that the plaintiffs failed to prove their non-economic damages. Thus,
defendants request the Court to deny plaintiffs' motion to set aside the
verdict, or alternatively, if the motion is granted, to order a new trial on all
issues.

The authority for the Court to set aside a jury verdict and order a new
trial based on the inadequacy of damages is founded on Va. Code § 8.01-
383, which provides in pertinent part: "In any civil case or proceeding, the
court before which a trial by jury is had, may grant a new trial . . . . A new
trial may be granted as well where the damages awarded are too small as
where they are excessive." While this power is to be used sparingly, Vir-
ginia's Supreme Court has reiterated that "[t]he law intends that the au-

thority should be used and that judges should be more than mere referees between litigating parties." *Id.* at p. 400.

In *Johnson*, a young father was survived by his wife and two minor children. The jury returned a verdict on a special verdict form for the plaintiffs in the amount of $135,788.45. It did not award any specific damages to the widow or children for sorrow, mental anguish, and solace and nothing to the children for loss of services and protection, all of which elements were outlined on the special verdict form. In addition, the jury awarded only $110,000 of the $900,000 amount the evidence established as loss of income. The Court, concluding that it was impossible to conceive of any rational basis for the jury's action, found the jury's verdict inadequate as a matter of law, and ordered a new trial.

The Court agrees with defendant that on its facts, *Johnson* is distinguishable from the case at bar. The *Johnson* Court after analyzing the evidence against the jury's finding on loss income observed that if this loss was "the only issue in the case," the jury's decision might be dispositive on the basis that the jury found unconvincing the extent of the loss claimed. *Id.* at p. 400.

The Court went on to say that when the other damage issues are considered and the jury made no award for sorrow, mental anguish, and solace and the children received nothing for lost services and protection, then it was clear that the "action of the jury renders the entire verdict suspect and leads to the conclusion that the jury must have misconceived or misunderstood the facts or the law." *Id.* at 401. Here, there is only one element of damage in question. On this the jury could very well have found the evidence unconvincing. Unlike *Johnson* there are no other departures from other elements of damage that the jury seemed not to consider in the face of uncontroverted evidence. While the Court agrees with the defendant that *Johnson* is distinguishable from this case, there are other things at work here. On the poll of the jury, it was evident that at least two members of the jury may have been confused about all of the elements of damages they must consider in the instruction. When the jury was questioned on the second poll, they responded that all they wished to award was the funeral expenses. While this could be seen as the only damages the jury found convincing after due consideration of all the damage claims, the inquiry should not stop here.

The standard governing whether a verdict should be set aside as inadequate was stated in *Bradner v. Mitchell*, 234 Va. 483, 362 S.E.2d 718 (1987). *Bradner* involved a personal injury plaintiff whose evidence of

special damages was uncontroverted. The jury awarded compensatory damages $42.65 over the amount of the special damages proven. The Court initially noted that despite the need to afford great weight to a jury verdict and the fact that there existed no standard measure of damages for pain and suffering, the finding of a jury is subject to the control of the court. *Id.* at 486. The Court stated that when a jury returns a verdict for the precise amount of the special damages claimed, the question of whether to set aside the verdict on the grounds that the jury failed to consider all of the elements of damages depends on whether the plaintiff's evidence of special damages is "uncontroverted and so complete that no rational fact-finder could disregard it." *Id.* at 487. If so, the Court must consider these proven damages as a fixed, constituent part of the jury verdict. *Id.* In such cases, the Court reasoned, where the remainder of the award appears insufficient to compensate the plaintiff for proven non-monetary elements, the Court must set aside the verdict as legally inadequate. *Id.* Applying the foregoing legal principles to the instant case, the Court finds that plaintiffs' evidence of the beneficiaries' sorrow for the decedent's death was uncontroverted and so complete that no rational fact-finder could disregard it. As such, the Court must consider those damages to be a fixed, constituent part of the jury's verdict.

*Johnson* is also distinguishable in that the issues concerning the defendants' liability in *Johnson* were much clearer than in the case at bar. The *Johnson* Court noted that the evidence was "insufficient to sustain a verdict finding the defendants *not* liable." *Id.* (Emphasis supplied.) In the case at bar, the issue of whether Dr. Shield violated the applicable standard of care and caused Mrs. Royster's death was a highly contested matter. However, the fact that *Johnson* is distinguishable from the instant case has no effect on the rule developed in *Bradner* that when the amount of special damages is uncontroverted and complete and the jury's verdict appears to the court insufficient to compensate the plaintiff for the proven elements of non-monetary loss, the verdict is inadequate as a matter of law and should be set aside.

In determining whether to order a new trial on all issues or only on the issue of damages, the Court looks to *Rawle v. McIlhenny*, 163 Va. 735, 177 S.E. 214 (1934), for the applicable standard. The *Rawle* Court identified five classes of cases in which a party may seek to set aside a verdict on the ground of inadequacy. *See id.* at 748-49. The instant case falls within the parameters of the fifth category, namely cases involving "conflicting evidence, having no clear preponderance either way." *Id.* at 749. The *Rawle*

court subdivided the fifth category into three subcategories. The case at bar falls within the third subcategory; "where the merits of the liability case have not been adequately developed at trial, or the question of damages is not 'distinctly separable' from the liability issues, or where the evidence warrants the inference that the jury has arbitrarily decided to make both parties bear a part of the loss . . . ." *Id.* at 750. Under this subcategory, a new trial should be granted on all issues. *Id.* The Court finds that the evidence on liability was not adequately developed at trial and that the question of damages was not "distinctly separate" from the liability issues. The highly contested liability evidence coupled with the small verdict returned by the jury and the confusion of some of the jurors indicated by their responses to the poll to the jury may well mean that the verdict represented a compromise on the issue of liability. Under these circumstances, the court is compelled to order a new trial encompassing all issues of liability and damages.