Present:  All the Justices

JOHNNIE W. RICE, CO-ADMINISTRATOR
OF THE ESTATE OF LEONA LYNN RICE,
DECEASED, ET AL.

v. Record No. 991880 OPINION BY JUSTICE CYNTHIA D. KINSER
                                        June 9, 2000
CLIFFORD ANTHONY CHARLES

              FROM THE CIRCUIT COURT OF DICKENSON COUNTY
                    Keary R. Williams, Judge


     In this wrongful death action, we address two separate

issues: (1) whether the circuit court erred by striking the

defendant's contributory negligence defense because his

testimony in support of that defense was not corroborated

as required by Code § 8.01-397, and (2) whether the circuit

court erred in denying the plaintiff's motion for a new

trial on the issue of damages because the jury verdict was

only for the exact amount of the decedent's funeral

expenses.  Finding no error with regard to the first issue

but concluding that the jury verdict is inadequate as a

matter of law, we will reverse in part, and affirm in part,

the judgment of the circuit court.

                    PRIOR PROCEEDINGS AND FACTS

     Johnnie W. and Rita S. Rice (the Rices), co-

administrators of the estate of their daughter Leona Lynn

Rice (Leona), filed a motion for judgment in the circuit

court against Clifford Anthony Charles pursuant to

Virginia's Death by Wrongful Act statute, Code §§ 8.01-50 through -56.[1]  They alleged that Leona died as a result of injuries sustained in a motor vehicle accident in which she was a passenger in a vehicle driven by Charles.  At trial, Charles admitted that he was negligent and that his negligence was a proximate cause of the accident and Leona's death.  However, Charles proceeded on a defense of contributory negligence.

At the close of all the evidence, the Rices moved to strike the defense of contributory negligence on the basis that there was insufficient corroboration of Charles' testimony, as required under Code § 8.01-397 (commonly referred to as the "dead man's statute").  The circuit court sustained the motion and thereafter submitted the case to the jury on the sole issue of damages.  The jury then returned a verdict for the Rices in the amount of $7,283.27 for "reasonable funeral expenses."  That figure represented the exact amount of Leona's funeral and related burial expenses[2] incurred by the Rices.  The jury did not

---

[1] The purpose of the Death by Wrongful Act statute is to compensate a decedent's statutory beneficiaries for their loss resulting from the decedent's death.  Wilson v. Whittaker, 207 Va. 1032, 1036, 154 S.E.2d 124, 128 (1967).

[2] The funeral home bill was $5,287.32, and the charge for the cemetery monument was $1,995.95, for a total of

award any damages to the statutory beneficiaries, Leona's parents and her older sister Beverly Rice McClanahan, for sorrow, mental anguish, and loss of solace.  See Code §§ 8.01-52 through -54.

The Rices subsequently moved to set aside the verdict and to award a new trial on the issue of damages.  The basis of their motion was the fact that the jury had awarded damages only for funeral expenses.  The Rices argued that, by returning such a verdict, the jury disregarded the court's instructions and the uncontroverted evidence.  The circuit court denied the motion and entered judgment for the Rices in accordance with the jury verdict. This appeal followed.

In accordance with well-established principles, we review the evidence in the light most favorable to the Rices, the prevailing parties at trial.  Morgen Indus., Inc. v. Vaughan, 252 Va. 60, 62, 471 S.E.2d 489, 490 (1996); Besser Co. v. Hansen, 243 Va. 267, 269, 415 S.E.2d 138, 139 (1992); Penn v. Manns, 221 Va. 88, 90, 267 S.E.2d 126, 127 (1980).  On the evening of the accident, Leona and Charles planned to see a movie but decided to "go[] cruising around for a while" in Charles' pickup truck

---

$7,283.27.  Hereinafter, the funeral and related burial expenses are referred to as "funeral expenses."

3

before the movie started.  During their drive, Leona and Charles saw J.D. Baker on a "four-wheeler" in a parking lot.  They stopped and asked Baker to go with them to the movie, and he agreed to do so.  Leona and Charles then followed Baker to his home where Charles and Baker subsequently decided to buy beer instead of going to a movie.  According to Charles, Leona heard the discussion about purchasing beer and did not object to the change in plans, but neither did she encourage or ask anyone to buy beer.

Because all three of these individuals were under the age of 21 years and could not legally purchase alcoholic beverages, see Code § 4.1-305, they went to the home of Scott Mullins.  The parties stipulated that, upon arriving there, Charles asked Mullins to buy beer for him.  Mullins agreed to do so, but McClanahan, who was dating Mullins at that time, objected.  As a result, McClanahan and Mullins "got into an argument," and Leona, Charles, and Baker left Mullins' house while McClanahan and Mullins were still arguing.  According to McClanahan, Leona said that she was "going straight home."

Charles testified that Leona then got back in Charles' truck, and, together with Baker, they proceeded to a local pharmacy where Charles talked to an individual who agreed

4

to purchase two cases of seven-ounce bottles of beer for Charles. After getting the beer and putting it in the back of the truck, Charles drove to Enochs Branch in Dickenson County, where he and Baker drank some of the beer and discussed where to go from there.[3] Leona did not drink any beer. Eventually, all three of them got back in Charles' pickup truck. Leona sat in the middle between Charles and Baker, and a case of beer was placed in the front floorboard. Charles testified that he then drove toward Haysi, and that, while he was driving, and in Leona's presence, Baker handed him additional beers to drink. According to Charles, Leona did not try to stop him from drinking, did not request to get out of the truck, and did not ask him to take her home, even though they drove by her house on the way to Haysi. Although Leona had her learner's permit, see Code § 46.2-334, she also did not offer to drive.

Continuing, Charles testified that, just before the accident occurred, he stopped to use the bathroom and

---

[3] Except for the stipulation regarding the events at Mullins' house and McClanahan's testimony about the same incident, the evidence concerning Charles' and Baker's purchase and consumption of beer before the accident as well as the details of how the accident occurred are found only in Charles' testimony. Baker did not testify at trial.

noticed that he had a "buzz" and could feel the effect of the alcohol.  At that point, Charles had consumed five or six of the seven-ounce bottles of beer in slightly less than two hours, and he had not eaten lunch or dinner that day.  However, Charles stated that he had no trouble with his driving and did not believe that anyone would have considered him intoxicated.  Charles further testified that he thought Leona would have told him if she had been concerned for her safety.

The accident occurred as Charles was coming into a "steep curve" too fast and lost control of his truck. Charles stated that he thought he had already driven through that curve.  The truck flipped, and Charles and his two passengers were thrown out of the truck.  When Charles found Leona after the accident, she was dead.

Approximately an hour and a half after the accident, Charles' blood alcohol content (BAC) measured .08 percent by weight by volume.[4]  A forensic toxicologist, whom Charles called to testify at trial, opined that Charles' BAC at the time of the accident could have been as low as .07 percent or as high as .10 percent, and that a BAC in that range would have adversely affected Charles' judgment, attention,

concentration, and reaction time.  However, the
toxicologist also testified that, considering Charles'
experience with drinking large quantities of alcohol, he
would not likely have been "visibly drunk" to an objective
observer.

Charles and Leona had been dating more than a year at
the time of her death and were engaged to be married.
Charles testified that Leona had ridden with him many times
when he was drinking and driving, and that they had argued
about his drinking.  At Leona's suggestion, Charles had
entered a detoxification center a few months before the
accident, but he had left the center before completing the
detoxification program.

Several witnesses testified about the impact of
Leona's death on her family.  A neighbor of the Rices
established that Leona had a close relationship with her
mother and that Leona's death upset the Rices.  The
neighbor added that Mrs. Rice continues to suffer because
of the death of her daughter and is not dealing well with
the loss.  One of Leona's friends also testified that Leona
had a good relationship with both McClanahan and Mrs. Rice,
and that the family was "heartbroken" when Leona died.

---

[4] Charles' BAC was documented by a Certificate of
Analysis from the Commonwealth of Virginia Department of

Mrs. Rice testified that she had a "very special" relationship with Leona and that, when she learned of Leona's death, she experienced "the awfullest feeling that any person can have." Mrs. Rice also stated that McClanahan and Leona were very close, and that Leona and Mr. Rice likewise had a good relationship.

Mrs. Rice acknowledged that she did not encourage Leona's relationship with Charles when the couple began dating. Mrs. Rice also stated that Leona had told her about Charles' drinking problem but had assured her parents that she would not ride in a car with someone who had been drinking.

Mr. Rice also testified that he loved Leona very much, that he spent a lot of time outdoors with her, and that his entire family was very close. He stated that he felt hurt and anger when he learned of Leona's death, and that her loss will "hurt [him] all [his] life." Mr. Rice further testified that Leona's death continues to affect his family, that his wife cries continuously, and that he has trouble dealing with his grief. He also testified that McClanahan has changed since Leona's death and is not as happy as she used to be.

_____

Criminal Justice Services, Division of Forensic Science.

McClanahan stated that she and Leona were close even though she was four years older than Leona, and that she still suffers over Leona's death.  Leona had told her about Charles' problem with drinking alcoholic beverages.  Consequently, McClanahan had warned Leona not to ride with Charles after he had been drinking, and, according to McClanahan, Leona assured her that she would not do so.  McClanahan related an incident just a few months prior to Leona's death when Leona had asked to get out of a vehicle because other people had beer in the vehicle.[5]

ANAYLSIS

This appeal presents two separate issues.  First, the Rices assign error to the circuit court's denial of their motion for a new trial on the issue of damages.  In an assignment of cross-error, Charles asserts that the circuit court erred by striking his defense of contributory negligence because his testimony in support of that defense was not corroborated.  We will address the assignment of cross-error first.

With regard to that issue, Charles contends that the circuit court erroneously required corroboration of all the

_____

[5] Leona's driver's education teacher also testified that he had instructed Leona's class about "zero tolerance," i.e., not to ride with a driver under the age of 21 who has consumed any alcohol.

9

elements of his contributory negligence defense. Instead, Charles claims that, under Code § 8.01-397, the court should only have required "that [his] account of the accident be supported or strengthened by the attendant circumstances or other testimony."

Elaborating, Charles argued orally that he had to prove three elements of his contributory negligence defense: (1) that Leona knew or should have known that it was dangerous to ride in a motor vehicle being driven by an individual who was or had been consuming alcoholic beverages; (2) that Leona knew or should have known that Charles was drinking on the evening in question and that his ability to drive was consequently impaired, and that she, nevertheless, voluntarily rode with him while he was driving his truck; and (3) that Leona's presence in Charles' truck at the time of the accident proximately caused her death. Charles acknowledged that the "vast majority" of the evidence with regard to the second element came solely from his testimony.[6] Nonetheless, he claims that, based on the stipulation regarding the events at Mullins' house and McClanahan's testimony, it is reasonable

---

[6] Charles established the first element with evidence other than his testimony, and he admitted the third element, that his negligence proximately caused the accident and Leona's death.

10

to infer that Leona heard the discussion about purchasing beer and the argument that ensued between her sister and Mullins, and that she therefore knew Charles was going to drink and drive that evening. This same evidence, according to Charles, also supports his testimony that he and Leona were together approximately an hour and one-half before the accident. Finally, Charles posits that his BAC level corroborates the fact that he had consumed alcohol before the accident and that his ability to drive was impaired. Thus, he claims that his testimony on this critical element of his defense was sufficiently corroborated. We do not agree.

Code § 8.01-397 provides that "[i]n an action by or against a person who, from any cause, is incapable of testifying . . . no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony." The statute was designed, in part, "to prevent a surviving party from having the benefit of his own testimony where, by reason of the death of his adversary, the latter's personal representative is deprived of the decedent's version of the [facts]." Haynes, Ex'x v. Glenn, 197 Va. 746, 752, 91 S.E.2d 433, 437 (1967).

We do not question that certain aspects of Charles' testimony concerning the events of the evening in question

11

and the circumstances of the accident were corroborated by other evidence. However, the critical inquiry is whether his testimony presented an essential issue that, if not corroborated, would defeat his contributory negligence defense. See Hereford v. Paytes, 226 Va. 604, 608, 311 S.E.2d 790, 792 (1984). We have previously recognized, and we do so again in this appeal, that "it is impossible to formulate a fixed rule as to the corroboration necessary in every situation" because each case must be decided on its particular facts. Id.

However, we have stated some general principles that are pertinent here. "It is not necessary that the corroborative evidence should of itself be sufficient to support a verdict, for then there would be no need for the adverse or interested party's testimony to be corroborated." Brooks, Adm'r v. Worthington, 206 Va. 352, 357, 143 S.E.2d 841, 845 (1965) (citing Burton's Ex'r v. Manson, 142 Va. 500, 509, 129 S.E. 356, 359 (1925); Davies v. Silvey, Adm'x, 148 Va. 132, 137, 138 S.E. 513, 514 (1927); Clay v. Clay, 196 Va. 997, 1002, 86 S.E.2d 812, 815 (1955)). "Corroborating evidence tends to confirm and strengthen the testimony of the witness[,]" and it may come from other witnesses as well as from circumstantial evidence. Hereford, 226 Va. at 608, 311 S.E.2d at 792. It

12

is not essential that a survivor's testimony be corroborated on all material points.  Id.; Brooks, 206 Va. at 357, 143 S.E.2d at 845.

> The corroboration, to be sufficient under the statute, however, must at least tend, "in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings [and] testified to by the [surviving] witness . . . which allegation or issue, if unsupported, would be fatal to the case."

Hereford, 226 Va. at 608, 311 S.E.2d at 792 (quoting Burton's Ex'r, 142 Va. at 508, 129 S.E. at 359).  (First emphasis added.)  Accord Diehl, Adm'x v. Butts, 255 Va. 482, 489, 499 S.E.2d 833, 838 (1998).

In the present case, we view these principles in the context of the necessary elements of Charles' contributory negligence defense.  "[A] guest may be guilty of contributory negligence if [the guest] knows or reasonably should know that [the] driver had been drinking intoxicating liquor[7] to an extent likely to affect the manner of . . . driving and voluntarily continues as a passenger after a reasonable opportunity to leave the automobile."  Meade v. Meade, 206 Va. 823, 827, 147 S.E.2d

---

[7] While the term "intoxicating liquor" is not defined in the Code, it appears to encompass beer, as well as wine, spirits, alcohol, and other such substances.  See Code § 4.1-100 (defining "[a]lcoholic beverages" as including all those substances, and further defining "[i]ntoxicated" with reference to "alcoholic beverages").

171, 174 (1966) (citing Seaboard Air Line Ry. Co. v.

Terrell, 149 Va. 344, 354-55, 141 S.E. 231, 235 (1928);

Yorke v. Maynard, 173 Va. 183, 188, 3 S.E.2d 366, 369

(1939); Bates, Adm'x v. Thompson, 200 Va. 501, 506, 106

S.E.2d 728, 732 (1959)).  It is not sufficient merely to

establish that the driver of an automobile has been

drinking and that the passenger knew that fact.  Meade, 206

Va. at 827, 147 S.E.2d at 174.  The evidence must also

prove that the driver's ability to operate the vehicle was

impaired because of the consumption of alcoholic beverages,

that the passenger knew, or in the exercise of ordinary

care should have known, of the driver's impaired ability,

and that the passenger nevertheless entered or continued to

ride in the vehicle.  Id.

Thus, we conclude that the question whether Leona knew

or should have known that Charles' ability to drive was

impaired because of his consumption of beer and she,

nevertheless, chose to continue to ride with him is the

sole essential issue raised by Charles' testimony regarding

his contributory negligence defense, which, if unsupported

by corroborating evidence, is fatal to his defense.  See

Hereford, 226 Va. at 608, 311 S.E.2d at 792; see also

Vaughn v. Shank, 248 Va. 224, 229, 445 S.E.2d 127, 130

(1994) (holding that Code § 8.01-397 required corroboration

14

of sole essential allegation on which claim was based); Ratliff, Adm'x v. Jewell, 153 Va. 315, 326, 149 S.E. 409, 412 (1929) ("witness need not be corroborated on all material points, but must be supported on some essential fact whose establishment is necessary to sustain the judgment"). We find no such corroborating evidence in the record.

Even if we accept the stipulation and McClanahan's testimony about the events at Mullins' house as corroboration of Charles' testimony that Leona knew about the plans to purchase beer, there nevertheless is not even a scintilla of evidence that "tends to confirm and strengthen" his assertion that Leona knew or should have known that his ability to drive was impaired. Hereford, 226 Va. at 608, 311 S.E.2d at 792. Instead, we find evidence supporting a different conclusion. Charles testified that, even though he felt a "buzz" when he stopped to use the bathroom, he did not have any trouble with his driving and did not believe anyone would view him as intoxicated. Furthermore, the toxicologist stated that Charles' degree of intoxication would not have been apparent to an objective observer because of his history of excessive drinking. Thus, rather than having corroborating evidence that Leona knew that Charles' ability to drive was

15

impaired that evening, the record actually contains evidence indicating the opposite. Nor is there evidence to corroborate Charles' testimony that Leona voluntarily continued to ride in his truck with him even though she allegedly knew the extent of his drinking on that evening, and never asked to get out of the truck or to go home.

Thus, we conclude that, while corroboration on all material points of Charles' contributory negligence defense is not necessary, the essential issue raised by his testimony remains unsupported. Hence, the circuit court did not err in striking Charles' contributory negligence defense and submitting the case to the jury solely on the issue of damages. Generally, when there is more than a scintilla of corroborating evidence, the question whether testimony has been sufficiently corroborated is an issue for the jury to resolve. Brooks, 206 Va. at 357, 143 S.E.2d at 845 (citing Timberlake's Adm'r v. Pugh, 158 Va. 397, 403, 163 S.E. 402, 404 (1932)). However, for the reasons already stated, the circuit court correctly determined that Charles' testimony was not corroborated as a matter of law. See Whitmer v. Marcum, Adm'x, 214 Va. 64, 68, 196 S.E.2d 907, 910 (1973)("corroboration need not always present a jury issue").

Since Charles admitted his liability and the court properly struck his defense of contributory negligence, the only issue for the jury's consideration was that concerning the question of damages. Thus, we turn to the Rices' assignment of error regarding the amount of damages awarded.

The Rices argue that the jury verdict in the exact amount of Leona's funeral expenses was inadequate as a matter of law because the verdict failed to compensate the statutory beneficiaries for the non-monetary elements of damage, such as sorrow, mental anguish, and loss of solace, despite uncontroverted evidence with regard to such damages. In response, Charles contends that, because the jury was instructed that it "may" consider items of non-economic damages but "shall" award damages for funeral expenses, the verdict is proper and supported by the evidence.[8] We agree with the Rices.

---

[8] The entire jury instruction on this issue states the following:

If you find your verdict for the plaintiffs, then in determining the damages to which they are entitled, you may consider, but are not limited to, any of the following which you believe by the greater weight of the evidence were caused by the negligence of the defendant as damages suffered by the beneficiaries:

    (1)   any sorrow, mental anguish, and loss of solace suffered by the beneficiaries. Solace may

17

In Bowers v. Sprouse, 254 Va. 428, 492 S.E.2d 637 (1997), this Court held that "a jury award in a personal injury action which compensates a plaintiff for the exact amount of the plaintiff's medical expenses and other special damages is inadequate as a matter of law, irrespective of whether those damages were controverted." Id. at 431, 492 S.E.2d at 639. Similarly, in Johnson, Adm'r v. Smith, 241 Va. 396, 403 S.E.2d 685 (1991), we examined the adequacy of a damage award in a wrongful death action. In Johnson, the verdict represented only about two years of the decedent's income for the widow, and only slightly more than one year of the decedent's income for each of two children. The verdict did not include any sum for sorrow, mental anguish, and solace for the decedent's widow and children, nor any sum for the children's lost services and protection. Id. at 399, 403 S.E.2d at 686. We found that verdict "incomprehensible" and concluded that "the jury must have misconceived or misunderstood the facts

---

include society, companionship, comfort, guidance, kindly offices, and advise [sic] of the decedent.

If you award damages, you may distribute these damages among Rita Sue Rice, Johnnie W. Rice, and Beverly Rice McClanahan.

If you find your verdict for the plaintiff[s], you shall award damages for:

18

or the law." Id. at 400-01, 403 S.E.2d at 687. Accord Hall, Adm'x v. Hall, 240 Va. 360, 365, 397 S.E.2d 829, 832 (1990).

We reach the same conclusion in this case. The jury verdict for the exact amount of Leona's funeral expenses was inadequate as a matter of law because it failed to compensate her statutory beneficiaries for any other items of damage despite the fact that the court instructed the jury that Charles was liable for Leona's death and any damages suffered by her parents and her sister. By returning a verdict for only the amount of the funeral expenses, the jury demonstrated a misunderstanding of either the law or the facts, or both. Furthermore, the evidence at trial clearly supported the conclusion that Leona's statutory beneficiaries experienced sorrow, mental anguish, and loss of solace as a result of Leona's death. Thus, they were entitled to compensation for these elements of damage. See Bowers, 254 Va. at 431, 492 S.E.2d at 638.

Our conclusion is not changed by the fact that the circuit court instructed the jury that it "shall award damages for . . . reasonable funeral expenses" but "may consider . . . any sorrow, mental anguish, and loss of solace suffered by the beneficiaries." (Emphasis added.)

---

(1) reasonable funeral expenses.

19

We agree with Charles that this instruction is the law of this case because the circuit court gave it to the jury without any objection by the Rices, see King v. Sowers, 252 Va. 71, 77, 471 S.E.2d 481, 484 (1996), and that the instruction does not incorporate the precise language of Code § 8.01-52.[9]  However, we do not accept Charles' argument that the jury followed the instructions given to it and elected, as it was told it could by use of the term "may," not to award any damages for non-economic losses.

The damage instruction given to the jury in Bowers also used the term "may" with regard to the elements of damage to be considered by the jury.  254 Va. at 431 n.3, 492 S.E.2d at 638 n.2.  Notwithstanding that fact, we did not approve the verdict, but instead concluded that the jury verdict for the exact amount of the plaintiff's medical expenses and other special damages in that case was inadequate as a matter of law.  Id. at 431, 492 S.E.2d at 639.  Similarly, the use of the term "may" rather than "shall" with regard to damages for sorrow, mental anguish,

_____

[9] Code § 8.01-52 states that a verdict in a wrongful death action "shall include, but may not be limited to, damages for the following:
   1. Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent;
   . . . [and]
   4. Reasonable funeral expenses . . . .

20

and loss of solace does not justify the jury's failure in this case to compensate the statutory beneficiaries for any other items of damage.

For these reasons, we will affirm the judgment of the circuit court in part, reverse in part, and remand for a new trial solely on the issue of damages.  See Rawle v. McIlhenny, 163 Va. 735, 748, 177 S.E. 214, 220 (1934) (when evidence is insufficient to support verdict finding defendant not liable, new trial is limited to question of damages).

Affirmed in part,
reversed in part,
and remanded.